Laurie Baddon (SBN 299106)
lbaddon@mwe.com
**MCDERMOTT WILL & EMERY LLP**
2049 Century Park East
Suite 3800
Los Angeles, CA  90067-3218
Telephone:      +1 310 277 4110
Facsimile:      +1 310 277 4730

Attorneys for Defendant
MODERNIZING MEDICINE, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TAHOE FOREST HOSPITAL DISTRICT, | CASE NO. |
| Plaintiff, | **DEFENDANT MODERNIZING MEDICINE INC.'S NOTICE OF REMOVAL TO FEDERAL COURT** |
| v. | |
| MODERNIZING MEDICINE, INC.; DOES 1 through 20, inclusive, | |
| Defendants. | **Complaint Filed: August 27, 2021** |

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

**TO THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND ITS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant MODERNIZING MEDICINE, INC. ("ModMed"), by and through its attorneys of record, hereby removes the above-entitled action pursuant to 28 U.S.C. §§ 1441(a) and (b) and 1332(a) from the Superior Court of the State of California, County of Nevada, to the United States District Court for the Eastern District of California.

This Court has original jurisdiction under 28 U.S.C. § 1332(a)(1), the alleged amount in controversy exceeds $75,000, exclusive of interests and costs, and complete diversity of citizenship exists as discussed further below.

## I.   PROCEDURAL SUMMARY

1.      On or about August 27, 2021, Plaintiff Tahoe Forest Hospital District ("Plaintiff") commenced an action against Defendant in the Superior Court of California, County of Nevada, in its complaint entitled *Tahoe Forest Hospital District vs. Modernizing Medicine, Inc. a Delaware Corporation; and DOES 1 – 20, Inclusive*, case number CU21-085759 ("Complaint").

2.      Plaintiff served Defendant with the Summons and Complaint on August 30, 2021 through Defendant's counsel, triggering a thirty (30) day timeframe within which Defendant was to respond to the Complaint. Cal. Civ. Proc. Code § 412.20(a)(3). True and correct copies of the Summons and Complaint are attached hereto as **Exhibit A**.

## II.   JOINDER

3.      Defendant is not aware of any other defendant having been served with a copy of Plaintiff's Complaint, and the requirements of 28 U.S.C. § 1446(b)(2)(A) are met.

## III.   BASIS FOR JURISDICTION

4.      This Court has original jurisdiction over this action on the basis of diversity pursuant to 28 U.S.C. § 1332(a)(1).

5.      The diversity requirement is satisfied because Plaintiff and Defendant are citizens of different states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

MᶜDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP
Aᴛᴛᴏʀɴᴇʏꜱ Aᴛ Lᴀᴡ
Sᴀɴ Fʀᴀɴᴄɪꜱᴄᴏ

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

McDermott Will & Emery LLP
Attorneys At Law
San Francisco

## IV.   THE PARTIES' DIVERSITY OF CITIZENSHIP

6.      At all relevant time, Plaintiff is and has been a citizen and resident of the State of California.  (**Exhibit A**, Complaint, ¶ 3).

7.      At all relevant times, Defendant is and has been incorporated under the laws of the state of Delaware, with its principal place of business[1] and corporate headquarters in the state of Florida. (**Exhibit B**, Declaration of Michelle Scheer ¶ 3.

8.      Pursuant to 28 U.S.C. § 1441(b)(1), all potential "Doe" defendants shall be disregarded for purposes of removal.  In addition, the allegations in the Complaint with respect to the potential "Doe" defendants are too vague as to their identity or relationship to the claims. (**Exhibit A**, Complaint, ¶ 5).

## V.   THE AMOUNT IN CONTROVERSY

9.      "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdiction threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). Defendant is not obliged to "research, state, and prove the plaintiff's claims for damages." *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997); *Conrad Assoc. v. Hartford Accident & Indem. Co.*, 994 F. Supp. 1196, 1198 (N.D. Cal. 1998).  Defendant can establish the amount in controversy by the allegations in the Complaint, or by setting forth facts in the notice of removal that demonstrate that the amount placed in controversy by Plaintiff exceeds the jurisdictional minimum. *Singer*, 116 F.3d at 377; *Conrad Assoc.*, 994 F. Supp. at 1198.

10.      In addition to the contents of the removal petition, the Court considers "summary-judgment-type evidence relevant to the amount in controversy at the time of removal," such as affidavits or declarations. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004); *Singer*, 116 F.3d at 377.

11.      In measuring the amount in controversy, a court must assume that the allegations of

---

[1] The phrase "principal place of business" "refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.  *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).

the Complaint are true and that a jury will return a verdict for Plaintiff on all claims made in the Complaint. *See Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002). The ultimate inquiry is what amount is put "in controversy" by the Complaint, not what the defendant will actually owe. *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005).

12.     Plaintiff prays for a specific dollar amount in its Complaint. *See, e.g.,* Complaint, ¶¶ 1, 5, 38-39, 44, 53, 61.

13.     Specifically, Plaintiff seeks "in excess of $221,400." *See id.*

14.     Assuming that Plaintiff's suit is successful, the amount in controversy requirement is met.[2] *See Jackson v. American Bankers Ins. Co.*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997) ("[t]he appropriate measure [of the amount in controversy] is the litigation value of the case assuming that the allegations of the complaint are true and assuming a jury returns a verdict for the plaintiff on all claims made in the complaint"); *Kenneth Rothschild Trust*, 199 F. Supp. 2d at 1001 (amount in controversy is based on assumption that plaintiff prevails on all claims).

15.     Plaintiff demands attorneys' fees.  (**Exhibit A,** Complaint, Prayer for Relief). Claims for attorneys' fees are properly considered in calculating the amount in controversy for purposes of removal on grounds for diversity jurisdiction.  *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D. Cal. 2002) (attorneys' fees included in determining jurisdictional amount where an underlying statute authorizes an award of attorneys' fees).

16.     Therefore, removal is appropriate and proper.

## VI.     COMPLIANCE WITH STATUTORY REQUIREMENTS FOR REMOVAL

17.     Pursuant to 28 U.S.C. § 1446(a), Defendant attaches a true and correct copy of the Summons and Complaint as **Exhibit A**. True and correct copies of all other state court filings are attached hereto as **Exhibit C**.

18.     In accordance with 28 U.S.C. § 1446(b), this Notice is timely filed with this Court.

---

[2] Defendant denies all of the material allegations in Plaintiff's Complaint, denies that Plaintiff was injured in any way, and denies that Plaintiff is entitled to any damages, including interest, attorney's fees, and costs. All numbers put forth are assumed for the purposes of calculating amount in controversy only, and are not an admission of any liability or Plaintiff's entitlement to any damages, whatsoever.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

Under Section 1446(b), "a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise." Plaintiff served the Summons and Complaint on August 30, 2021, upon Defendant through Defendant's undersigned counsel, who agreed to accept service of process on behalf of ModMed.

19.     Pursuant to 28 U.S.C. § 1441(a), the United States District Court, Eastern District is the proper venue for this removal, because the Complaint was filed in Nevada County, which is within the boundaries of the Eastern District of California.

20.     In accordance with 28 U.S.C. § 1446(d), Defendant will provide written notice of the filing of this Notice of Removal to counsel of record for Plaintiff, and a Notice of Filing of Notice of Removal is being filed contemporaneously with the Clerk of the Superior Court of the State of California, County of Nevada.

21.     If any question arises as to the propriety of the removal of this action, Defendant respectfully requests the opportunity to present a brief, evidence, and oral argument in support of its position that this case is removable.

WHEREFORE, Defendant respectfully requests that these proceedings be removed to this Court.

Dated: September_17, 2021          Respectfully submitted,

                                   **MCDERMOTT WILL & EMERY LLP**

                                   By:   _/s/Laurie A. Baddon_
                                         LAURIE BADDON (SBN 299106)
                                         Attorneys for Defendant
                                         MODERNIZING MEDICINE, INC.

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# **<u>EXHIBIT A</u>**

1  DAVID J. RUDERMAN, State Bar No. 245989
   DRuderman@chwlaw.us
2  PAMELA K. GRAHAM, State Bar No. 216309
   PGraham@chwlaw.us
3  ALENA SHAMOS, State Bar No. 216548
   AShamos@chwlaw.us
4  **COLANTUONO, HIGHSMITH & WHATLEY, PC**
   420 Sierra College Drive, Suite 140
5  Grass Valley, California 95945-5091
   Telephone:  (530) 432-7357
6  Facsimile:   (530) 432-7356

7

8  MATTHEW MUSHET, State Bar No. 231293
   In-house Counsel
   mmushet@tfhd.com
9  **TAHOE FOREST HOSPITAL DISTRICT**
   10121 Pine Avenue
10 Truckee, California 96160
   Telephone:  (530) 582-6384
11 Facsimile:   (530) 582-3567

12

13 Attorneys for Plaintiff Tahoe Forest Hospital District

14

15            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16                    **FOR THE COUNTY OF NEVADA**

                                                          FILE
17                                                        BY FAX

18 TAHOE FOREST HOSPITAL DISTRICT,        **CASE NO.**
                                          *Unlimited Jurisdiction*
        Plaintiff,                        **CU21-085759**
19
   v.
20                                        **COMPLAINT FOR:**
   MODERNIZING MEDICINE, INC.; DOES 1     1. **MONEY HAD AND RECEIVED**
21 through 20, inclusive                  2. **CONVERSION**
                                          3. **UNJUST ENRICHMENT**
22      Defendants.                       4. **DECLARATORY RELIEF**

23

24

25

26

27

28

Exempt from Filing Fees
Government Code § 6103

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF NEVADA

AUG 27 2021

JASON B. GALKIN
EXECUTIVE OFFICER & CLERK
By: S. SKOVERSKI, Deputy Clerk

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

1

COMPLAINT

Plaintiff TAHOE FOREST HOSPITAL DISTRICT ("Plaintiff" or the "District") brings this Complaint ("Complaint") against MODERNIZING MEDICINE, INC. ("Modernizing Medicine"), a Delaware corporation, and other as of yet unknown entities and individuals identified as DOES 1 through 20 (collectively, "Defendants") for recovery of in excess of $221,400 the District paid Modernizing Medicine, but which Modernizing Medicine improperly collected, was never entitled to receive, and now refuses to return.

## I.   INTRODUCTION

1.    This lawsuit is about damages the District suffered when Modernizing Medicine unlawfully collected over $221,400 from the District based on an invalid contract the District never authorized, to purportedly compensate Modernizing Medicine for medical records the District does not even own.

2.    In 2016, the District purchased certain assets of the now defunct North Tahoe Orthopedics ("NTO"). This purchase, however, expressly excluded NTO's medical records or any liability for maintenance of those records.

3.    Modernizing Medicine claims it had a License Agreement with NTO for the maintenance of NTO's medical records. Although the District did not acquire those records, or assume any liability for maintaining them, less than three months after the District purchased NTO's assets, Modernizing Medicine purported to execute an Addendum to the Modernizing Medicine License Agreement (Orthopedics) with the District's Orthopedics MultiSpecialty Clinic. The Addendum purported to change the contracting party's name from "North Tahoe Orthopedics" to "Tahoe Forest MultiSpecialty Clinics Orthopedics" in the alleged underlying License Agreement with NTO. It also claimed to extend and otherwise maintain the License Agreement "in full force and effect." Moreover, the "Manager" who signed the Addendum, purportedly on behalf of the District's MultiSpecialty Clinic, lacked any authority to enter into agreements for the District or otherwise legally bind it.

4.    The District did not assume NTO's obligations or contractual duties and has no obligation to pay for the license NTO purchased, nor to otherwise assume any contractual

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

2
COMPLAINT

261339.7

obligations running to NTO from any prior agreement with Modernizing Medicine. The Addendum to NTO's agreement with Modernizing Medicine does not impose any legal obligation on the District. It is an improper amendment and novation unsupported by consideration. Moreover, the MultiSpecialty Clinic is a department of the District — not a separate entity — and the employee who signed the addendum has no authority to bind the District. The license was also not competitively bid.

5.     Because the District had no obligation to pay Modernizing Medicine, and Modernizing Medicine should not have charged or collected in excess of $221,400 from the District, the District is entitled now to receive its money back.

6.     Accordingly, the District seeks by this lawsuit recovery of the sums improperly charged and collected by Modernizing Medicine, and damages for the harm it suffered, as more particularly described below.

## II.   PARTIES

7.     The District is, and at all times mentioned herein was, a California Health Care District, established in 1949 under Health and Safety Code section 32000, et seq. ("The Local Health Care District Law") and located in Nevada County, California.

8.     The District is informed and believes, and on that basis alleges, that defendant Modernizing Medicine, is, and at all times mentioned herein was, an active corporation duly formed under the laws of the State of Delaware, registered with the California Secretary of State as Entity No. C3345726.

9.     The District is unaware of the true names and capacities, whether individual, corporate, or otherwise, of Defendants DOES 1 through 20, inclusive, and therefore sues those parties by such fictitious names. The District will seek leave to amend this Complaint to state the true names and capacities of the fictitiously named parties and to insert appropriate allegations concerning them when their true names have been ascertained.

10.    The District is informed and believes, and thereon alleges, that all defendants are, and at all times mentioned herein were, the agents, servants, representatives, employees, or assigns of the

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

other defendants herein, whether named or unnamed, and in doing the things alleged herein were acting within the scope of such authority as agent, servant, representative, employee, or assign with the knowledge, permission, consent, and authorization of each co-defendant. Actions taken, or omissions made, by each defendant are considered to be actions or omissions of the other defendants for purposes of this Complaint.

### III.    JURISDICTION AND VENUE

11.    This Court has jurisdiction, and venue is proper in this Court, because the acts giving rise to this action and the transactions herein complained of, occurred in the State of California, County of Nevada.

### IV.    GENERAL ALLEGATIONS

**A.    The District's Acquisition of North Tahoe Orthopedics**

12.    On April 18, 2016, the District purchased the assets of NTO, pursuant to the Contract of Sale, a true and correct copy of which is attached hereto as **Exhibit A** and incorporated herein by reference. The Contract of Sale specified the assets included in the District's purchase, and expressly excluded specific liabilities. (See, Ex. A, ¶ 1.2–1.7.) The Contract of Sale expressly and repeatedly stated that the District was not purchasing NTO's patient records or assuming any responsibility for maintaining those records. Specifically, it stated:

  a. "The Assets do not include any computer software or licenses for computer software." (*Id.* at ¶ 1.6.)

  b. "Buyer shall not assume any liabilities of Seller," including "Seller's liabilities for the maintenance and safekeeping of the patient medical records..." while allowing Seller to "maintain its patient medical records at the Clinic." (*Id.* at ¶ 1.71(b).)

  c. "Seller shall be responsible for the maintenance and safekeeping of its patient medical records. After the Closing Date, Seller shall allow Buyer access to the

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

1   patient medical records on an as-needed basis and in accordance with all

2   applicable laws and regulations." (*Id.* at ¶ 4.2.)

3       13.     Accordingly, there can be no dispute that NTO's medical records and the maintenance

4   of those medical records was expressly excluded from the District's purchase of NTO's assets.

5       14.     Following the District's acquisition of NTO, NTO's assets were incorporated into the

6   District as part of the District's Orthopedics MultiSpecialty Clinic, a department of the District. The

7   Orthopedics Multispecialty Clinic was not, and did not become, a separate entity with the power to

8   enter into agreements on its own behalf, nor on behalf of the District.

9       15.     The District is informed, believes, and thereon alleges that NTO has dissolved since

10   the sale of its assets to the District.

11

12   **B.**    **Modernizing Medicine Entered into an Invalid Addendum with a**

13          **Department of the District**

14       16.     The District is informed and believes, and thereon alleges, that Modernizing

15   Medicine claims to have had a License Agreement with NTO for maintenance of its medical records.

16       17.     As alleged herein, however, NTO's medical records, and the maintenance thereof,

17   were expressly excluded from the Contract of Sale between the District and NTO. NTO's License

18   Agreement with Modernizing Medicine was never assigned to the District at any time.

19       18.     On June 13, 2016, less than three months after the sale of NTO's assets to the District,

20   Modernizing Medicine purported to execute an Addendum to the Modernizing Medicine License

21   Agreement (Orthopedics) ("Addendum") with the District's Orthopedics MultiSpecialty Clinic. The

22   Addendum purported to change the contracting party's name from "North Tahoe Orthopedics" to

23   "Tahoe Forest MultiSpecialty Clinics Orthopedics" in the alleged underlying License Agreement

24   with NTO, dated June 18, 2015. It also purported to extend and otherwise maintain the License

25   Agreement "in full force and effect." A true and correct copy of the Addendum to the Modernizing

26   Medicine License Agreement (Orthopedics) is attached hereto as **Exhibit B**.

27       19.     The Addendum states it was signed by the parties' duly authorized representatives.

28   Stacy Olson signed on behalf of the MultiSpecialty Clinic. The Addendum simply identifies Ms.

1    Olson as a "Manager." The District, however, had never authorized Ms. Olson to enter into

2    agreements on behalf of the District or otherwise legally bind it. Ms. Olson was therefore not a "duly

3    authorized representative" of the District.

4           20.    Likewise, the MultiSpecialty Clinic is a department of the District, not an

5    independent entity. It therefore has no power to enter into agreements for itself.

6           21.    There was also no basis in fact or law for Modernizing Medicine to believe that Ms.

7    Olson had authority to act on the District's behalf. In fact, under the District's Bylaws, only the Chief

8    Executive has such authority. (Tahoe Forest Hospital District, Bylaws of the Board of Directors

9    (2015 revision), pp. 13–15, Article V, Management, Sections 1 and 2, a true and correct copy of

10   which is attached hereto as **Exhibit C**.)

11          22.    Despite there being **no valid contract** between the District and Modernizing

12   Medicine, and the District having no patient medical records for Modernizing Medicine to manage,

13   Modernizing Medicine has wrongfully and inequitably charged the District $5,535 per month since

14   November 2017, improperly collecting a total of over $221,400 funds to date from the District. Yet,

15   Modernizing Medicine has provided the District no consideration in exchange for that sum.

16          23.    The District discovered it was paying Modernizing Medicine for an entire electronic

17   health records platform when it asked Modernizing Medicine to produce records or data of former

18   North Tahoe Orthopedics' patients. Sergej Popov, a District project manager, informed Modernizing

19   Medicine that the District was not a party to the Addendum or the underlying license agreement in a

20   December 31, 2020 e-mail, requesting a direct agreement with Modernizing Medicine for the data

21   extract. Modernizing Medicine produced a new statement of work and required the District to pay

22   $750 before producing the patient data, affirming that the District in fact received nothing in

23   exchange from Modernizing Medicine for the District's payments exceeding $221,400, unjustly

24   charged by Modernizing Medicine since November 2017. A true and correct copy of the relevant

25   December 31, 2020 through January 4, 2021 e-mail exchange is attached hereto as **Exhibit D**.

26

27

28

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

---

6

COMPLAINT

**C.      The Addendum Does Not Entitle Modernizing Medicine to the Funds**

**1.      The Addendum is void as an improper amendment**

24.      The law recognizes an addendum as any document signed after the signing of the agreement to modify its terms, while leaving the rest of the contract intact. It generally redefines the definitions, sections, clauses, and terms that need modifying. Because it modifies the original contract, the law requires all parties to the underlying contract agree and sign off on it. (E.g., *Shephard v. Lerner* (1960) 182 Cal.App.2d 746; Civ. Code, §§ 1698, 1699, 1700.) Contract addenda are typically utilized to make minor changes, such as adjusting dates, amending terms or conditions that are not working for the parties, or extending a deadline. Large changes materially impacting the contract's focus and structure, however, require an entirely new contract.

25.      Modernizing Medicine's original License Agreement was purportedly entered into with NTO in 2015. (See Ex. B.) The Addendum, however, incorrectly represents that the original license agreement was between Modernizing Medicine and "Tahoe Forest MultiSpecialty Orthopedics." The Addendum then purports to "amend" all references in the original agreement from "North Tahoe Orthopedics" to "Tahoe Forest MultiSpecialty Clinics Orthopedics" as its "new name," but to keep all other terms of the original agreement in effect. This amendment is false. At no time did NTO change its name to Tahoe Forest MultiSpecialty Orthopedics. As a material term of the Addendum, its misrepresentation of NTO's status voids the agreement. (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 420; see also Rest.2d Contracts, § 163, coms. a and c; Civil Code, § 1640.)

26.      Rather, NTO dissolved. As of NTO's dissolution, the original contract between it and Modernizing Medicine was therefore void, or at a minimum only enforceable as against the prior entity, not the District. (*Ray v. Alad Corp.* (1977) 19 Cal.3d 22, 28.)

27.      Before its dissolution, NTO sold the District only the assets specifically identified in the Contract of Sale. (See, **Ex. A) NTO's medical records, and liabilities for maintenance of its medical records, were expressly excluded from the District's purchase**. (See Ex. A., ¶ 1.2–1.7, 1.71(b) and 4.2.)

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

28.     MultiSpecialty Clinic is not a new name for a legal entity. It is a department of the District. As the District was never a party to the License Agreement between Modernizing Medicine and NTO, any claimed "addendum" is improper. Any effort to impose the obligations of the original License Agreement on the District, through one of its departments, could only have been accomplished by a new contract with the District's consent, as well as material terms and sufficient consideration to the District. (E.g., Civ. Code, §§ 1550, 1565, 1567.) None of this occurred.

### 2.     The Addendum is void as an improper novation

29.     The Addendum is also an improper novation. A novation is "the substitution of a new obligation for an existing one." (Civ. Code, § 1530.) It is accomplished by "the substitution of a new debtor in place of the old one, with intent to release the latter." (*Id.*, § 1531.) "Novation is made by contract, and is subject to all the rules concerning contracts in general." (*Id.*, § 1532.) Therefore, a novation requires consideration. (*Wells Fargo Bank v. Bank of America* (1995) 32 Cal.App.4th 424, 432 (*Wells Fargo*); cf. *Trans-World Intern., Inc. v. Smith-Hemion Productions, Inc.* (C.D. Cal. 1997) 972 F.Supp. 1275, 1284 ["new consideration is necessary" to support novation].) "Where novation is in the form of a substitution of a new debtor for an old one, the release of the old debtor is sufficient to constitute the requisite consideration for the new debtor's promise." (*Wells Fargo, supra,* at p. 432.)

30.     There was no consideration for a purported novation under the facts of this case. The Addendum recites that the agreement was made "[i]n consideration of the mutual promises and agreements below." Paragraph two of the Addendum replaces the name "North Tahoe Orthopedics" with the name "Tahoe Forest MultiSpecialty Clinics Orthopedics." This purports to accomplish the substitution of one debtor for another. Paragraph three of the Addendum states that the underlying contract, the Modernizing Medicine License Agreement (Orthopedics), remains in effect as amended. There is no new consideration for the District to enter into the novation — it receives nothing in exchange for its agreement to stand in the shoes of NTO. And, as already alleged, nor was there any consent by the District to this action. At the time of the Addendum, NTO was dissolved and no longer existed. Therefore, Modernizing Medicine's release of NTO is not sufficient

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

261339.7

1 consideration to support the Addendum. The Addendum is thus also void for lack of consideration.

2 (Cf. *Wells Fargo*, *supra*, 43 Cal.App.4th at p. 432.)

3         **3.**      **The District did not authorize execution of the Addendum**

4      31.    The Addendum is void for the additional reason that Stacy Olson had no authority to

5 enter agreements on the District's behalf. Public officials only have as much power as is granted to

6 them by statute. (*Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007) 149 Cal.App.4th

7 1460, 1472 (*Poway*) ["[O]ne who makes a contract with a municipal corporation is bound to take

8 notice of limitations on its power to contract and also of the power of the particular officer or agency

9 to make the contract," internal quotations omitted].) Thus,

10       [o]ne who deals with [a] public officer stands presumptively charged with a full

11       knowledge of that officer's powers, and is bound at his ... peril to ascertain the extent

12       of his ... powers to bind the government for which he ... is an officer, and any act of

13       an officer to be valid must find express authority in the law or be necessarily

14       incidental to a power expressly granted.

15 (*Katsura v. City of San Buenaventura* (2007) 155 Cal.App.4th 104, 109 (*Katsura*), citations and

16 quotations omitted.)

17      32.    The laws governing the District do not give Ms. Olson contracting authority. The

18 District is a health care district organized under the Local Health Care District Law, Health and

19 Safety Code section 32000 et seq. The Legislature provides for a board of directors to oversee the

20 operation of a health care district. (Health & Saf. Code, §§ 32100 [formation of board], 32125

21 [board's powers and duties].) The board must "make and enforce all rules, regulations and bylaws

22 necessary for the administration, government, protection and maintenance of health care facilities

23 under their management and all property belonging thereto ... ." (*Id.*, § 32125, subd. (a).)

24      33.    The board may employ an administrator (also referred to as a Chief Executive Officer

25 or CEO) and prescribe the administrator's duties and powers. (Health & Saf. Code, § 32121, subd.

26 (h) [power to prescribe duties of officers].) The District's Bylaws provide that its CEO has "the

27 necessary authority to be held responsible for the administration of the District in all its activities and

28 entities ... ." (Bylaws, Management, **Ex. C** hereto, Art. V, Section 1, Chief Executive Officer, p. 13.)

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

COMPLAINT

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

1   The CEO may hire employees and assign responsibilities. (*Id.* at Section 2, Authority and

2   Responsibility, subd. W, p. 15.) However, all other powers granted by the Legislature reside in the

3   Board. (*Id.* at Article II, Board of Directors, Section 3. Powers, subd. H. Residual Powers, p. 5.)

4   Thus, only the District's Board of Directors, the District's CEO, or officers or employees to whom

5   the Board or CEO has delegated contracting authority may enter into agreements on the District's

6   behalf and thereby bind the District. Managers are not delegated such authority.

7       34.   Neither the Board nor the District's Chief Executive Officer have authorized Ms.

8   Olson to contract on the District's behalf. And a government contract must follow the public entity's

9   rules and procedures to be valid. (*First Street Plaza Partners v. City of Los Angeles* (1998) 65

10  Cal.App.4th 650, 666 (*First Street*).) Therefore, the Addendum she signed does not bind the District.

11  Modernizing Medicine is charged with full knowledge of Ms. Olson's lack of authority to do so.

12  (*Katsura, supra*, 155 Cal.App.4th at p. 111, citing *Amelco Electric v. City of Thousand Oaks* (2002)

13  27 Cal.4th 228.)

14

15      **D.   Modernizing Medicine Has No Equitable Right to the District's Funds**

16      35.   "[C]ontracts wholly beyond the powers of a municipality are void. They cannot be

17  ratified; no estoppel to deny their validity can be invoked against the municipality; and ordinarily no

18  recovery in quasi contract can be had for work performed under them." (*First Street, supra*, 65

19  Cal.App.4th at p. 667–670 [there is no estoppel against a public entity where the required procedures

20  for entry into a contract were not followed]; *Miller v. McKinnon* (1942) 20 Cal.2d 83, 88 (*Miller*)

21  [violation of statutory contracting procedures voids contract with public entity].); *Poway, supra*, 149

22  Cal.App.4th at p. 1476 ["Numerous cases hold promissory estoppel may not be raised against a

23  public entity when it would defeat the public policy of requiring adherence to statutory procedures

24  for entering into contracts"].) Moreover, where a public contract is declared void, it is void for all

25  purposes, and "a contractor may not be paid […] under that contract." (*Amelco Electric v. City of

26  Thousand Oaks, supra*, 27 Cal.4th at p. 234.) The Addendum is void because it was never authorized

27  by the District. That the District has mistakenly paid the license fee is irrelevant — the agreement

28

---

10

COMPLAINT

1    was never effective, and Modernizing Medicine must reimburse the District for any money it

2    received under the Addendum.

3        36.    Ms. Olson's signature on the Addendum cannot give rise to estoppel. Estoppel exists

4    where a party misrepresents or conceals facts with the intent that another will rely on the

5    misrepresentation. (*Jordan v. City of Sacramento* (2007) 148 Cal.App.4th 1487, 1496.) It does not

6    apply "where the material facts are known to both parties and the pertinent provisions of law are

7    equally accessible to them." (*Ibid.*) That is the situation here. Modernizing Medicine knew that, at

8    the time she signed the Addendum, Ms. Olson was a manager with the MultiSpecialty Clinic — the

9    Addendum says as much. Modernizing Medicine ignored, however, that Ms. Olson had no

10   authorization nor authority from the District to bind it to the obligations in the Addendum, and that

11   Modernizing Medicine had no binding agreement with the District since its License Agreement was

12   with NTO, a dissolved company. For this reason, the Addendum is void and unenforceable against

13   the District. That Ms. Olson improperly and without authorization may have signed it changes

14   nothing.

### E.    Modernizing Medicine Did Not Comply with Mandated Bidding Procedures

18       37.    Any contract for more than $25,000 must be awarded through competitive bidding.

19   (Health & Saf. Code, §§ 32132, subd. (a), 32138.) Modernizing Medicine's electronic health records

20   system costs the District more than $25,000 per year. The District did not solicit proposals or

21   determine Modernizing Medicine was the most cost-effective solution for the District's requirements

22   for an electronic health records systems before purporting to sign the Addendum. Therefore, the

23   Addendum purporting to bind the District to a license for an electronic health records system is void

24   for this reason as well. (*Miller, supra,* 20 Cal.2d at p. 88.)

25       38.    Modernizing Medicine has improperly collected, and retained, in excess of $221,400

26   in license fees it has received from the District since November 2017. The District is entitled to

27   recover those funds.

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

261339.7

39.     On April 29, 2021, the District sent Modernizing Medicine a demand letter seeking the return of at least $221,400 in funds unjustly paid. Modernizing Medicine rejected the demand, forcing the District to bring this action.

## V.     CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### Money Had and Received — Against All Defendants

40.     The District realleges paragraphs 1 through 39 above as though set forth fully herein.

41.     In doing the things alleged herein, Modernizing Medicine, DOES 1 through 20, and each of them, became indebted to the District in a sum in excess of $221,400 for money had and received by these Defendants, and each of them.

42.     In doing the things alleged herein, Modernizing Medicine, DOES 1 through 20, and each of them, received money, totaling in excess of $221,400, that otherwise was intended to be used for the benefit of the District, its officers, employees, patients, and communities the District serves, which these Defendants were not entitled to otherwise receive.

43.     The money had and received by Modernizing Medicine, DOES 1 through 20, and each of them, was in fact not used for the benefit of the District, its officers, employees, patients, or communities the District serves, and was not otherwise earned by Defendants, nor were Defendants entitled to the total or any portion of the amounts received.

44.     Although the District has demanded payment, neither the whole nor any part of the sum has been paid, and there is now due, owing, and unpaid to the District the sum exceeding $221,400, plus interest at the maximum legal rate from November 2017. This amount is now due, owing, and unpaid from Defendants to the District.

45.     As a proximate result of the money had and received by Modernizing Medicine, DOES 1 through 20, and each of them, the District has sustained and/or continues to sustain damages in a sum according to proof. The District will seek leave of Court to amend this Complaint to set forth the amount of said damages when the exact nature and extent of all such damages have been ascertained.

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

261339.7

46.     By reason of Defendants' failure to return the money had and received, the District has been compelled to incur attorneys' fees, court costs, and the expense of this action, and may in the future be compelled to incur additional liability, expenses and fees by reason of settlement or judgment.

## SECOND CAUSE OF ACTION

### Conversion — Against All Defendants

47.     The District realleges paragraphs 1 through 46 above as though set forth fully herein.

48.     As alleged herein, during the period of November 2017 through April 2021, Modernizing Medicine, DOES 1 through 20, and each of them, collected from the District in excess of $221,400 without the District's consent.

49.     Modernizing Medicine, DOES 1 through 20, and each of them, now wrongfully have possession of, or exercise control over, these funds which belong to the District.

50.     As a proximate result of Defendants' conversion, the District has sustained and/or continues to sustain damages in a sum according to proof. The District will seek leave of Court to amend this Complaint to set forth the amount of said damages when the exact nature and extent of all such damages have been ascertained.

51.     By reason of Defendants' failure to return the converted funds, the District has been compelled to incur attorneys' fees, court costs, and the expense of this action, and may in the future be compelled to incur additional liability, expenses and fees by reason of settlement or judgment.

## THIRD CAUSE OF ACTION

### Unjust Enrichment — Against All Defendants

52.     The District realleges paragraphs 1 through 51 above as though set forth fully herein.

53.     In doing the things alleged herein, Modernizing Medicine, DOES 1 through 20, and each of them, received at least $221,400 in funds that belong to the District and have unjustly retained the benefit of those funds.

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

54.      Defendants' retention of the benefit is at the expense of the District, in that the money received by Defendant belongs to the District.

55.      The District is entitled to restitution for the loss the District has suffered and payment of the sum by which Defendants have been enriched, according to proof at trial.

## FOURTH CAUSE OF ACTION

### Declaratory Relief — Against All Defendants

56.      The District realleges paragraphs 1 through 55 above as though set forth fully herein.

57.      An actual and present controversy has arisen and now exists between the District, on the one hand, and Modernizing Medicine, DOES 1 through 20, and each of them, on the other regarding the District's entitlement to recover the funds paid to Modernizing Medicine beginning in 2017. The District contends there was no valid contract between itself and Modernizing Medicine, and Modernizing Medicine provided no services or other consideration in exchange for receipt of the sums in excess of $221,400 collected from the District beginning November 2017. The District thus contends it is entitled to return of the funds.

58.      On information and belief, Defendant Modernizing Medicine disagrees with these allegations and asserts that it is entitled to retain in excess of $221,400 collected from the District.

59.      The District desires and is entitled to a judicial declaration as to the responsibilities and obligations of the parties to this case, and each of them, with respect to the funds in excess of $221,400 paid by the District to Modernizing Medicine.

60.      Such declaratory relief is necessary and appropriate at this time so that the District and Defendants may ascertain their rights.

61.      Therefore, the District prays for a declaration that (a) there exists no valid or binding contract between the District and Modernizing Medicine; (b) Modernizing Medicine was not entitled to collect $221,400, or any other sum, from the District; and (c) the District is entitled to the return of the amounts in excess of $221,400 that it paid to Modernizing Medicine beginning November 2017.

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

COMPLAINT

261339.7

## VI.    PRAYER FOR RELIEF

WHEREFORE, the District prays for relief against Modernizing Medicine, DOES 1 through 20, and each of them, as more fully set forth below:

1.      As to the First and Second Causes of Action for Money Had and Received and Conversion, for damages in an amount to be proven at trial.

2.      As to the Third Cause of Action for Unjust Enrichment, for restitution for the loss the District has suffered and payment of the sum by which Defendants have been enriched, according to proof at trial.

3.      As to the Fourth Cause of Action, a declaration that (a) there exists no valid or binding contract between the District and Modernizing Medicine; (b) Modernizing Medicine was not entitled to collect $221,400, or any other sum, from the District; and (c) the District is entitled to the return of the amounts in excess of $221,400 that it paid to Modernizing Medicine beginning November 2017.

4.      As to all causes of action, for the District's fees and costs of suit.

5.      For such other and further relief as the Court may deem just and proper.

DATED:  ___August 26, 2021                        COLANTUONO, HIGHSMITH &
                                                  WHATLEY, PC


                                                  _Pamela K. Graham_
                                                  _____
                                                  DAVID J. RUDERMAN
                                                  PAMELA K. GRAHAM
                                                  ALENA SHAMOS
                                                  Attorneys for Plaintiff
                                                  Tahoe Forest Hospital District

Colantuono, Highsmith & Whatley, PC
420 SIERRA COLLEGE DRIVE, SUITE 140
GRASS VALLEY, CA 95945-5091

261339.7

# EXHIBIT A

# CONTRACT OF SALE

This Contract of Sale ("Contract") is entered into as of April _14_, 2016 ("Effective Date"), by and between Tahoe Forest Hospital District, a California health care district ("Buyer") and North Tahoe Orthopedics, a California Professional Partnership ("Seller"). The parties agree as follows:

## ARTICLE 1
## PURCHASE AND SALE OF ASSETS

**1.1    Assets Being Purchased.**  Seller shall sell to Buyer and Buyer shall purchase from Seller, on the terms specified in this Contract, all the personal property of Seller shown on the attached schedule marked "Exhibit A" (the "Assets").

**1.2    Excluded Assets.**  Other than the Assets purchased pursuant to paragraph 1.1, all of Seller's right, title and interest of every kind and nature in and to all of the assets and properties owned or leased by Seller as of the date hereof that are used in, beneficial to, incidental to, resulting from, related to or otherwise associated with Seller's business, whether tangible, intangible, personal or real and wherever located and by whomever possessed, shall remain Seller's property. Specifically, and without limitation, Buyer is not purchasing the goodwill, business, and trade names of Seller, or any other intangible property of Seller.  In addition, Buyer is not purchasing Seller's patient medical records.

**1.3    Purchase Price.**  Buyer shall pay to Seller on April _18_, 2016 (the "Closing Date"), the sum of $_61,891.94_ (the "Purchase Price") in cash in lawful money of the United States in full payment of the purchase price of all of the Assets described in Section 1.1 of this Contract.

**1.4    Conditions of Sale.**

(a)    The purchase and sale described in and covered by this Contract shall be conducted and consummated in full compliance with all the requirements of the Uniform Commercial Code—Bulk Sales Division and the General Corporation Law of the State of California.

(b)    The Assets shall be transferred free of all liens and encumbrances. As of the Effective Date, Bank of the West has a blanket security interest on all of the Assets, as evidenced by a UCC Financing Statement showing Bank of the West as the Secured Party and Seller as the Debtor filed with the California Secretary of State on December 14, 2015, filing Number 15-7499267282.  Seller shall cause Bank of the West to file a termination statement on or before the Closing Date terminating Bank of the West's security interest in the Assets.

# EXHIBIT B

**Addendum to the**
**MODERNIZING MEDICINE LICENSE AGREEMENT (ORTHOPEDICS)**

This Addendum to the Modernizing Medicine License Agreement (Orthopedics) (this "**Addendum**") is effective upon the date last signed below, and amends and is made part of the Modernizing Medicine License Agreement (Orthopedics) dated as of June 18, 2015 (the "**License Agreement**") by and between Modernizing Medicine, Inc., a Delaware corporation ("**Modernizing Medicine**"), and Tahoe Forest MultiSpecialty Clinics Orthopedics ("**Medical Practice**").

**AGREEMENTS**

In consideration of mutual promises and agreements below, the parties hereto agree as follows:

1.   Capitalized terms used in this Addendum that are not otherwise defined herein shall have the meanings set forth in the License Agreement.

2.   All references in the License Agreement to the name of Medical Practice as "North Tahoe Orthopedics" shall be hereby amended to "Tahoe Forest MultiSpecialty Clinics Orthopedics" the new legal name of Medical Practice.

3.   All terms of the License Agreement shall remain in full force and effect as supplemented hereby. In the event of any conflict between the terms of the License Agreement and this Addendum, the terms of this Addendum shall prevail.

IN WITNESS WHEREOF, the parties hereto have signed this Addendum by their duly authorized representative on the dates indicated below.  This Addendum is not valid and is not effective until executed by Modernizing Medicine.

**Modernizing Medicine, Inc.**                     **Medical Practice**

By: *Karen O'Byrne*                                By: *Stacy Olson*
                                                   Stacy Olson (Jun 13, 2016)

Name: Karen O'Byrne                                Print Name:  Stacy Olson

Title: CFO/COO                                     Title:  Manager

Date: Jun 13, 2016                                 Date:  Jun 13, 2016

# EXHIBIT C

BYLAWS OF THE BOARD OF DIRECTORS

TAHOE FOREST HOSPITAL DISTRICT

# Table of Contents

ARTICLE I.  NAME, AUTHORITY AND PURPOSE ..................................................................1

Section 1.  Name ...................................................................................................................1

Section 2.  Authority .............................................................................................................1

Section 3.  Purpose and Operating Policies..........................................................................1

ARTICLE II.  BOARD OF DIRECTORS ..............................................................................2

Section 1.  Election ...............................................................................................................2

Section 2.  Responsibilities...................................................................................................2

    A.  Philosophy and Objectives ........................................................................2

    B.  Programs and Services ...............................................................................2

    C.  Organization and Staffing...........................................................................3

    D  Medical Staff ..............................................................................................3

    E.  Finance .......................................................................................................3

    F.  Grounds, Facilities and Equipment ............................................................4

    G.  External Relations.......................................................................................4

    H.  Assessment and Continuous Improvement of Quality of Care...................4

    I.   Strategic Planning ......................................................................................4

Section 3.  Powers.................................................................................................................4

    A.  Overall Operations .....................................................................................4

    B.  Medical Staff ..............................................................................................5

    C.  Auxiliary .....................................................................................................5

    D.  Other Adjuncts............................................................................................5

    E.  Delegation of Powers .................................................................................5

    F.  Provisions to Prevail...................................................................................5

    G.  Resolutions and Ordinances ......................................................................5

    H.  Residual Powers ........................................................................................5

    I.  Grievance Process ......................................................................................5

Section 4.  Vacancies ...........................................................................................................6

Section 5.  Meetings .............................................................................................................6

    A.  Regular Meetings .......................................................................................6

    B.  Special Meetings........................................................................................6

    C.  Policies and Procedures ............................................................................7

Section 6.  Quorum ......................................................................................................... 7

Section 7.  Medical Staff Representation ........................................................................ 7

Section 8.  Director Compensation and Reimbursement of Expenses ........................... 7

Section 9.  Board Self-Evaluation .................................................................................. 8

ARTICLE III.  OFFICERS ......................................................................................................... 8

Section 1.  Officers ........................................................................................................ 8

Section 2.  Election of Officers ...................................................................................... 8

Section 3.  Duties of Officers ......................................................................................... 8

    A.  President ........................................................................................................... 8

    B.  Vice-President .................................................................................................. 8

    C.  Secretary .......................................................................................................... 8

    D.  Treasurer .......................................................................................................... 8

    E.  Clerk ................................................................................................................. 8

ARTICLE IV.  COMMITTEES .................................................................................................... 9

Section 1.  Special Committees ...................................................................................... 9

Section 2.  Standing Committees .................................................................................... 9

    A.  Joint Conference Committee ............................................................................ 9

    B.  Finance Committee .......................................................................................... 9

    C.  Governance Committee .................................................................................. 10

    D.  Personnel Committee ..................................................................................... 11

    E.  Retirement Plan Committee ........................................................................... 11

    F.  Quality Committee .......................................................................................... 11

    G.  Community Benefit Committee ....................................................................... 12

ARTICLE V.  MANAGEMENT ................................................................................................ 13

Section 1.  Chief Executive Officer .............................................................................. 13

Section 2.  Authority and Responsibility ....................................................................... 13

ARTICLE VI.  HOME HEALTH CARE SERVICE ..................................................................... 15

Section 1.  Establishment ............................................................................................. 15

Section 2.  Governing Body/Professional Advisory Committee .................................... 15

Section 3.  Policies, Rules and Regulations ................................................................. 16

ARTICLE VII.  HOSPICE ......................................................................................................... 16

Section 1.  Establishment ............................................................................................. 16

Section 2.  Governing Body/Appointment of Qualified Administrator ........................... 16

Section 3.  Policies, Rules and Regulations ................................................................. 16

158267 1

ARTICLE VIII TAHOE FOREST HOSPITAL ......................................................................16

    Section 1.  Establishment ...........................................................................................17

    Section 2.  Governing Body ........................................................................................17

    Section 3.  Policies, Rules and Regulations ...............................................................17

ARTICLE IX.  INCLINE VILLAGE COMMUNITY HOSPITAL .............................................17

    Section 1.  Establishment ...........................................................................................17

    Section 2.  Governing Body ........................................................................................17

    Section 3.  Policies, Rules and Regulations ...............................................................18

ARTICLE X.  MEDICAL STAFF..........................................................................................18

    Section 1.  Nature of Medical Staff Membership ........................................................18

    Section 2.  Qualification for Membership ....................................................................18

    Section 3.  Organization and Bylaws ..........................................................................18

    Section 4.  Appointment to Medical Staff ....................................................................19

    Section 5.  Staff Meetings:  Medical Records .............................................................19

    Section 6.  Medical Quality Assurance .......................................................................20

    Section 7.  Hearings and Appeals ..............................................................................20

        A.  Time for Appeal .................................................................................20

        B.  Grounds for Appeal ...........................................................................20

        C.  Time, Place and Notice .....................................................................21

        D.  Appeal Board .....................................................................................21

        E.  Appeal Procedure ..............................................................................21

        F.  Decision .............................................................................................22

        G.  Right to One Hearing .........................................................................22

        H.  Review Initiated By Board of Directors ..............................................22

ARTICLE XI.  AUXILIARY ..................................................................................................22

ARTICLE XII.  REVIEW AND AMENDMENT OF BYLAWS ...............................................22

ADOPTION OF BYLAWS....................................................................................................23

REVISION HISTORY ..........................................................................................................23

BYLAWS OF THE BOARD OF DIRECTORS
OF
TAHOE FOREST HOSPITAL DISTRICT

Pursuant to the provisions of Sections 32104, 32125 and 32128 of the Health and Safety Code of the State of California, the Board of Directors of TAHOE FOREST HOSPITAL DISTRICT adopts these Bylaws for the government of TAHOE FOREST HOSPITAL DISTRICT.

## ARTICLE I.   NAME, AUTHORITY AND PURPOSE

Section I.   Name.

The name of this District shall be "TAHOE FOREST HOSPITAL DISTRICT".

Section 2.   Authority.

A.   This District, having been established May 2, 1949, by vote of the residents of said District under the provisions of Division 23 of the Health and Safety Code of the State of California, otherwise known and referred to herein as "The Local Health Care District Law", and ever since that time having been operated there under, these Bylaws are adopted in conformance therewith, and subject to the provisions thereof.

B.   In the event of any conflict between these Bylaws and "The Local Health Care District Law", the latter shall prevail.

C.   These Bylaws shall be known as the "District Bylaws".

Section 3.   Purpose and Operating Policies.

A.   Purpose.

Tahoe Forest Hospital District is committed to be the best mountain community health care system in our nation.  All members of our team, working together, will ensure that the services we provide are satisfying, effective, efficient and of the highest quality, with access for all.  We will strive each day to exceed patient, community, physician and employee expectations.

B.   Operating Policies.

In order to accomplish the Mission of the District, the Board of Directors establishes the following Operating Policies:

1.   Non-Discrimination:  It is the policy of Tahoe Forest Hospital District to not discriminate in admissions, provisions of service, hiring, training and employment practices on the basis of age; ancestry; color; disability; gender, gender identity, or gender expression; marital status; medical condition; national origin; political affiliation; race; religion; sexual orientation; veteran status/military service; genetic information.

158267.1

2.   Through planned development and responsible management, the assets of the District will be used to meet the service needs of the area in an efficient and cost effective manner, after evaluation of available alternatives and other resources available to the District.  This may include the development and operation of programs, services and facilities at any location within or without the District for the benefit of the people served by the District.

3.   The District shall dedicate itself to the maximum level of quality consistent with sound fiscal management, and community based needs.

4.   The Board shall provide a means for effective consumer participation and involvement in planning the future course of the District.  Planning shall be accomplished in conjunction with other community resources, and will be coordinated with other service providers, when appropriate.

5.   Improvement of the health status of the area will be the primary emphasis of services offered by the District.  This will be accomplished through programs of inpatient and outpatient care, as well as outreach services in the areas of health education and prevention.

In addition, the District may elect to provide other programs of human service outside of the traditional realm of health care, where unmet human service needs have been identified through the planning process.

## ARTICLE II.   BOARD OF DIRECTORS

The Board of Directors:

Section I.   Election.

There shall be five members of the Board of Directors who shall be elected for four year terms as provided in "The Local Health Care District Law".

Section 2.   Responsibilities.

Provides continuing direction for planning, operation, and evaluation of all District programs, services and related activities consistent with the District Bylaws.

A.   Philosophy and Objectives.

Considers the health requirements of the District and the responsibilities that the District should assume in helping to meet them.

B.   Programs and Services.

1.   Approves long and short range plans for the development of programs and services to be provided by the District.  Takes action on recommendations of the Planning Committee and Chief Executive Officer.

158267.1

2.   Provides general direction to the Chief Executive Officer in the implementation of programs and service plans.

3.   Approves policies which govern programs and services.

4.   Evaluates the results of programs and services on the basis of previously established objectives and requirements.  Receives reports from the Chief Executive Officer and directs the Chief Executive Officer to plan and take appropriate actions, where warranted.

C.   <u>Organization and Staffing</u>.

1.   Adopts the plan of organization of the District, including plans of organization of the Board of Directors, Administration and Medical Staff.

2.   Elects officers of the District in accordance with provisions of the Bylaws.

3.   Confirms the appointment of both Directors and others to committees of the Board.

4.   Selects and appoints the Chief Executive Officer.

5.   Evaluates the continuing effectiveness of the organization.

D.   <u>Medical Staff</u>.

1.   Appoints all Medical Staff members.

2.   Ensures that the District Medical Staff is organized to support the objectives of the District.

3.   Reviews and takes final action on appeals involving Medical Staff disciplinary action.

4.   Approves Medical Staff Bylaws and proposed revisions.

E.   <u>Finance</u>.

1.   Assumes ultimate responsibility for the financial soundness and success of the District.

2.   Assumes ultimate responsibility for the appropriate use of endowment funds and of other gifts to the District.  Exercises trusteeship responsibility to see that funds are used for intended purposes.

3.   Adopts annual budgets of the District, including both operating and capital expenditure budgets.

158267.1

4.   Receives and reviews periodic financial reports.  Considers comments and recommendations of its Finance Committee or management staff.

5.   Receives and reviews reports of the District's auditors.

6.   Approves policies which govern the financial affairs of the District.

7.   Authorizes officers of the District to act for the District in the execution of financial transactions.

F.   <u>Grounds, Facilities and Equipment</u>.

1.   Approves plans for development, expansion, modernization and replacement of the District's grounds, facilities, major equipment and other tangible assets.

2.   Approves the acquisition, sale and lease of real property.

G.   <u>External Relations</u>.

Assumes ultimate responsibility for representing the communities served by the District and representing the District to the communities served.

H.   <u>Assessment And Continuous Improvement Of Quality Of Care</u>

Ensures that the proper organizational environment and systems exist to continuously improve the quality of care provided. Responsible for a system wide quality assessment and performance improvement program that reflects all departments and services. Reviews Quality Assessment Reports focused on indicators related to improving health outcomes and the prevention and reduction of medical errors. Provides oversight to and annually approves the written Quality Assurance / Process Improvement plan.

I.   <u>Strategic Planning</u>.

1.   Oversees the strategic planning process.

2.   Establishes long range goals and objectives for the District's programs and facilities.

<u>Section 3.   Powers</u>.

A.   <u>Overall Operations</u>.

The Board of Directors shall determine policies and shall have control of, and be responsible for, the overall operations and affairs of this District and its facilities.

158267.1

B.  <u>Medical Staff</u>.

The Board of Directors shall authorize the formation of a Medical Staff to be known as "The Medical Staff of Tahoe Forest Hospital District".  The Board of Directors shall determine membership on the Medical Staff, as well as the Bylaws for the government of said Medical Staff, as provided in ARTICLE IX of these Bylaws.

C.  <u>Auxiliary</u>.

The Board of Directors may authorize the formation of service organizations to be known as "The Tahoe Forest Hospital Auxiliary" and "The North Lake Tahoe Community Health Care Auxiliary", the Bylaws of which shall be approved by the Board of Directors.

D.  <u>Other Adjuncts</u>.

The Board of Directors may authorize the formation of other adjunct organizations which it may deem necessary to carry out the purposes of the District; the Bylaws of such organizations shall be approved by the Board of Directors.

E.  <u>Delegation of Powers</u>.

The Medical Staff, Auxiliary, and any other adjunct organizations shall have those powers set forth in their respective Bylaws.  All powers and functions not set forth in their respective Bylaws are to be considered residual powers still vested in the Board of Directors.

F.  <u>Provisions to Prevail</u>.

These District Bylaws shall override any provisions to the contrary in the Bylaws, or Rules and Regulations of the Medical Staff, Auxiliary or any of the adjunct organizations.  In case of conflict, the provisions of these District Bylaws shall prevail.

G.  <u>Resolutions and Ordinances</u>.

From time to time, the Board of Directors may pass resolutions regarding specific policy issues, which resolutions may establish policy for the operations of this District.

H.  <u>Residual Powers</u>.

The Board of Directors shall have all of the other powers given to it by "The Local Health Care District Law" and other applicable provisions of law.

I.  <u>Grievance Process</u>.

The Board of Directors delegates the responsibility to review and resolve grievances to the Grievance Committee.

Section 4.   Vacancies.

Any vacancy upon the Board of Directors shall be filled by appointment by the remaining members of the Board of Directors within sixty (60) days of the vacancy. Notice of the vacancy shall be posted in at least three (3) places within the District at least fifteen (I5) days before the appointment is made.  The District shall notify the elections officials for Nevada and Placer Counties of the vacancy no later than fifteen (15) days following either the date on which the District Board is notified of the vacancy or the effective date of the vacancy, whichever is later, and of the appointment no later than fifteen (15) days after the appointment.  In lieu of making an appointment, the remaining members of the Board of Directors may within sixty (60) days of the vacancy call an election to fill the vacancy.  If the vacancy is not filled by the Board of Directors or an election called within sixty (60) days, the Board of Supervisors of the County representing the larger portion of the Hospital District area in which an election to fill the vacancy would be held may fill the vacancy, within ninety (90) days of the vacancy, or may order the District to call an election.  If the vacancy is not filled or an election called for within ninety (90) days of the vacancy, the District shall call an election to be held on the next available election date.  Persons appointed to fill a vacancy shall hold office until the next District general election that is scheduled 130 or more days after the date the District and the elections officials for Nevada and Placer Counties were notified of the vacancy and thereafter until the person elected at such election to fill the vacancy has been qualified, but persons elected to fill a vacancy shall hold office for the unexpired balance of the term of office.

Section 5.   Meetings.

A.   Regular Meetings.

Unless otherwise specified at the preceding regular or adjourned regular meeting, regular meetings of the Board of Directors shall be held on the fourth Thursday of each month at 4:00 PM at a location within the Tahoe Forest Hospital District Boundaries.  The Board shall take or arrange for the taking of minutes at each regular meeting.

B.   Special Meetings.

Special meetings of the Board of Directors may be held at any time and at a place designated in the notice and lying within the District, except as provided in the Brown Act, upon the call of the President, or by not fewer than three (3) members of the Board of Directors, and upon written notice to each Director specifying the business to be transacted, which notice shall be delivered personally or by mail and shall be received at least twenty-four (24) hours before the time of such meeting, provided that such notice may be waived by written waiver executed by each member of the Board of Directors. Notice shall also be provided within such time period to local newspapers and radio stations which have requested notice of meetings.  Such notice must also be posted twenty-four (24) hours before the meeting in a location which is freely accessible to the public.  In the event of an emergency situation involving matters upon which

prompt action is necessary due to disruption or threatened disruption of District services (including work stoppage, crippling disaster or other activity which severely impairs public health, safety or both), the Board may hold a special meeting without complying with the foregoing notice requirements, provided at least one (1) hour prior telephone notice shall be given to local newspapers and radio stations which have requested notice of meetings, and such meetings shall otherwise be in compliance with the provisions of Government Code Section 54956.5. The Board shall take or arrange for the taking of minutes at each special meeting.

    C. <u>Policies and Procedures</u>.

The Board may from time to time adopt policies and procedures governing the conduct of Board meetings and District business. All sessions of the Board of Directors, whether regular or special, shall be open to the public in accordance with the Brown Act (commencing with Government Code Section 54950), unless a closed session is permitted under the Brown Act or Health and Safety Code Sections 32106 and 32155 or other applicable law.

<u>Section 6. Quorum.</u>

The presence of a majority of the Board of Directors shall be necessary to constitute a quorum to transact any business at any regular or special meeting, except to adjourn the meeting to a future date.

<u>Section 7. Medical Staff Representation.</u>

The Chief of the Medical Staff shall be appointed as a special representative thereof to the Board of Directors without voting power, however, and shall attend the meetings of the Board of Directors. In the event the Chief of Staff cannot attend a meeting, the Vice-Chief of the Medical Staff shall attend during the absence of the Chief of Staff.

<u>Section 8. Director Compensation and Reimbursement Of Expenses.</u>

The Board of Directors shall serve without compensation, except that the Board of Directors, by a resolution adopted by a majority vote of the members of the Board, may authorize the payment of not to exceed one hundred dollars ($100.00) per meeting, not to exceed five (5) meetings a month, as compensation to each member of the Board of Directors.

Each member of the Board of Directors shall be allowed his or her actual necessary traveling and incidental expenses incurred in the performance of official business of the District as approved by the Board or Chief Executive Officer, per Board policy.

/ /

158267.1

<u>Section 9.  Board Self-Evaluation.</u>

The Board of Directors will monitor and discuss its process and performance at least annually.  The self-evaluation process will include comparison of Board activity to its manner of governance policies.

## ARTICLE III.  OFFICERS

<u>Section I.   Officers.</u>

The officers of the Board of Directors shall be President, Vice-President, Secretary and Treasurer who shall be members of the Board, and a Clerk.

<u>Section 2.   Election of Officers.</u>

The officers of the Board of Directors shall be chosen every year by the Board of Directors in December of the preceeding calendar year and shall serve at the pleasure of the Board.  The person holding the office of President of the Board of Directors shall not serve two successive terms, unless by unanimous vote of the Board of Directors taken at a regularly scheduled meeting.  In the event of a vacancy in any office, an election shall be held at the next regular meeting following the effective date of the vacancy to elect the officer to fill such office.

<u>Section 3.   Duties of Officers.</u>

A.  <u>President</u>.   Shall preside over all meetings of the Board of Directors.  Shall sign as President, on behalf of the District, all instruments in writing which he/she has been authorized and obliged by the Board to sign and such other duties as set forth in these Bylaws.

B.  <u>Vice-President</u>.   The Vice-President shall perform the functions of the President in case of the President's absence or inability to act.

C.  <u>Secretary</u>.   The Secretary shall ensure minutes of all meetings of the Board of Directors are recorded and shall see that all records of the District are kept and preserved.

D.  <u>Treasurer</u>.

The Treasurer will serve as the chairperson of the Board Finance Committee and shall ensure the Board's attention to financial integrity of the District.

E.  <u>Clerk</u>.   The Chief Executive Officer or his designee shall be appointed the Clerk of the Board of Directors, and shall perform the functions of the Secretary in case of the Secretary's absence or inability to act.

8

## ARTICLE IV.   COMMITTEES

No Committee shall have the power to bind the District, unless the Board provides otherwise in writing.

### Section I.   Ad Hoc Committees.

Ad Hoc Committees may be appointed by the President of the Board of Directors from time to time as he/she deems necessary or expedient.  No Committee shall have the power to bind the District, unless the Board provides otherwise in writing, but shall perform such functions as shall be assigned to them by the President, and shall function for the period of time specified by the President at the time of appointment or until determined to be no longer necessary and disbanded by the President of the Board of Directors.  The President shall appoint each Committee chair.

### Section 2.   Standing Committees.

Standing Committees may from time to time be created by resolution duly adopted by the Board of Directors.  The President shall appoint the members of these committees and the Chair thereof, subject to the approval of the Board by majority of quorum.  Committee appointments shall be for a period of one (1) year and will be made annually at the December Board meeting, following the election of Board Officers.  The initial Standing Committees will consist of the following:

A.   Joint Conference Committee.

1.   The Joint Conference Committee (JCC) shall consist of the Chief of Staff, the Vice Chief of Staff, the Chief Executive Officer, and the President of the Board of Directors and one other member of the Board appointed by the President.  The Chair shall alternate at the beginning of the Medical Staff year between a Medical Staff JCC member selected by the Chief of Staff and a Board of Directors JCC member selected by the President of the Board of Directors.

2.   The Committee shall meet as needed.

3.   The JCC shall review policy relating to the performance of the Medical Staff and shall serve as a forum for discussion of mutual concerns of the Board of Directors, the Chief Executive Officer and his/her management staff, and the Medical Staff.

4.   The JCC shall constitute a forum for the discussion of matters of District and Medical Staff policy, practice and planning, and a forum for interaction between the Board of Directors and the Medical Staff on such matters as may be referred by the Executive Committee or the Board of Directors.  The JCC shall exercise other responsibilities set forth in these Bylaws.

B.   Finance Committee.

158267.1

1.   The Committee shall comprise two (2) Board Members.  The Board Treasurer shall serve as Chairperson of the Committee, and the second Committee member shall be appointed by the Board President.

2.   The Committee shall meet as needed.  A report will be made to the Board of Directors quarterly, or otherwise as requested.

3.   The Committee shall have the following responsibilities pursuant to the policies of the Board of Directors:

a.   Development of District operating, cash and capital budgets for approval by the Board of Directors.

b.   Monitoring of District budget performance and financial management.

c.   Review of capital purchase recommendations before presentation to the Board of Directors.

d.   Review and comment on monthly financial statements and expenditure reports.

e.   Oversight of annual independent audit and supervision of any necessary corrective measures.

f.   Supervision of the investment of District funds.

g.   Special projects, as required in the area of financial management, or as directed by the Board of Directors.

h.   Oversight of budget and expenditures for facility projects.

C.   Governance Committee

1.   The Committee shall comprise two (2) Board Members appointed by the Board President.

2.   The Committee shall meet as needed.

3.   The Committee shall have the following responsibilities pursuant to the policies of the Board of Directors:

a.   Provide oversight of the Compliance program efforts to achieve regulatory compliance by  reviewing  its activities, quality and effectiveness, and to monitor that management appropriately addresses compliance recommendations;

b.   Conduct periodic review of these Bylaws and Board policies.

c.   Submit recommendations to the Board of Directors for changes in these documents as necessary and desirable.

158267.1

    d.  Draft new Board policies and procedures as necessary or as directed by the Board of Directors for recommendation to the Board.

    e.  Advance best practices in board governance.

    f.  Conduct the annual board self-assessment and board goal setting process.

D.  <u>Personnel Committee</u>

    1.  The Committee shall comprise two (2) Board Members appointed by the Board President.

    2.  The Committee shall meet as needed.

    3.  The Committee shall have the following responsibilities pursuant to the policies of the Board of Directors:

        a.  Chief Executive Officer Relations

            1.  Employment Agreement

            2.  Performance Evaluation

            3.  Incentive Compensation Program

        b.  Chief Executive Officer/Board of Directors Liaison

    4.  Memorandum of Understanding with District bargaining units

E.  <u>Retirement Plan Committee</u>

    1.  The Committee is a sub-committee of the Personnel Committee.

    2.  The Committee shall comprise the two (2) Board Members of the Personnel Committee appointed by the Board President, Chief Executive Officer, CFO, and Chief Human Resources Officer.

    3.  The Committee shall meet as needed.

    4.  The Committee shall have the following responsibilities:

        a.  Establish and administer the District's Investment Policy Statement.

        b.  Provide administrative oversight for the Tahoe Forest Hospital District Money Purchase Pension Plan and the Tahoe Forest Hospital District Deferred Compensation Plan.

G. Quality Committee

    1.   The Committee membership shall be comprised of a minimum of two members of the Board of Directors as appointed by the Board President and two (2) members of the Tahoe Forest Hospital Medical Staff as appointed by the Medical Executive Committee.  {Recommend Chief of Staff or designee and Chairperson of the Quality Assessment and Improvement Committee}

    2.   The Committee shall meet a minimum of four (4) times per calendar year.

    3.   The Committee is accountable to the Board of Directors for the following:

        a.   Provide oversight for the organization-wide Quality Assessment and Performance Improvement Plan;

        b.   Set expectations of quality care, patient safety, environmental safety, and performance improvement throughout the organization;

        c.   Ensure the provision of organization-wide quality of care, treatment, and service provided and prioritization of performance improvement throughout the organization;

        d.   Monitor the improvement of care, treatment, and services to ensure that it is safe, beneficial, patient-centered, customer-focused, timely, efficient, and equitable;

        e.   Oversee and be accountable for the organization's participation and performance in national quality measurement efforts, accreditation programs, and subsequent quality improvement activities;

        f.   Ensure the development and implementation of ongoing education focusing on service excellence, performance improvement, risk-reduction/safety enhancement, and healthcare outcomes.

H. Community Benefit Committee

    1.   The Committee shall comprise two (2) Board Members.

    2.   The Committee shall meet at least 4 times a year and additionally as needed.

    3.   The Committee shall have the following responsibilities pursuant to the policies of the Board of Directors:

        a.   Ensure Health System strategic planning and stated goals include community and population health initiatives to improve health, decrease costs, and improve the patient experience.

        b.   Provide advice and input in the deployment of the tri-annual Community Health Needs Assessment (CHNA).

158267.1

   c. Review resulting data from CHNA, provide input into the Community Health Improvement Plan (CHIP), and assist in development of long term strategies, aligned with Health System goals, to address key health issues.

   d. Monitor the planning, development, implementation and results of major programs aimed at improving the health of the community.

   e. With collaborative partners, make recommendations for program continuation or termination based on progress toward identified measurable objectives, available resources, level of community ownership, and alignment with criteria for priorities.

   f. Review and provide input on proposed public communications about the organization's community benefit activities.

   g. Engage the community to achieve community health improvement goals through partnerships.

## ARTICLE V.   MANAGEMENT

<u>Section I.   Chief Executive Officer</u>.

The Board of Directors shall select and employ a Chief Executive Officer who shall act as its executive officer in the management of the District.  The Chief Executive Officer shall be given the necessary authority to be held responsible for the administration of the District in all its activities and entities, subject only to the policies as may be adopted from time to time, and orders as may be issued by the Board of Directors or any of its committees to which it has delegated power for such action by a writing.  The Chief Executive Officer shall act as the duly authorized representative of the Board of Directors.

<u>Section 2.   Authority and Responsibility</u>.

The Chief Executive Officer shall have the following duties and responsibilities as follows.  Other duties may be assigned by the Board.

A.     Assists, counsels, and advises the Board of Directors on the establishment of Hospital policies; acts as agent of the Board in carrying out such policies.

B.     Recommends District policy positions regarding legislation, government, administrative operation and other matters of public policy as required.

C.     Assists the Board of Directors in effectively fulfilling its responsibilities by keeping the Board informed, on a monthly basis, of the operating results of the District; compares monthly operations to Board approved plans and budgets explaining variances that may arise.

13

D.      Assists and advises the Board with respect to the District's authority under the law and changes in state statutory guidelines and requirements.

E.      Develops and implements appropriate strategic and annual operating plans that document the long and short-term goals and objectives of the District.

F.      Actively pursues and supports the appraisals and development of new programs which could benefit the long-range success and survival of the District.

G.      Establishes concise reporting relationships for all positions and departments in the District.  Establishes methods which will foster the achievement of District goals and objectives and support the efficiency and effectiveness of all operations through proper communication and coordination.

H.      Coordinates all operations with the Medical Staff, its committee structure and its leadership; demonstrates a proactive and positive relationship with the Medical Staff.

I.      Ensures a consistency of purpose and mutuality of interest between the operations and bylaws of the Medical Staff and the policies and bylaws of the District.

J.      Develops and maintains quality improvement programs designed to enhance quality and customer satisfaction.

K.      Establishes operating policies and procedures for all departments, delegating specific responsibility for documentation, monitoring, compliance, and reporting or results to subordinates, as required.

L.      Establishes, implements and maintains a comprehensive budgeting program for the District.  This program includes an appropriate consideration of operational, financial and statistical information needed to efficiently and effectively control all District operations.

M.      Consistently generates sufficient net income to meet established financial goals.

N.      Develops strong marketing and public relations programs.

O.      Ensures the competitive viability and continuance of the District.

P.      Through various techniques, encourages the development of services which promote District growth and expanded potential constituencies.

Q.      Ensures the coordination of Auxiliary and Foundation Bylaws and operations with the Bylaws and operations of the District.

R.      Establishes a proper, consistent image of the District and its operations.

14

S.      Personally represents the District to a variety of individuals, community groups, and health industry organizations.

T.      Maintains active professional contacts through local, state and national associations in order to effectively network, as required.

U.      Demonstrates the ability to effectively represent the District at national, state and local meetings, conferences and conventions, as required.

V.      Remains current with national and local issues affecting District administration and their potential impact on the District; serves as a well-informed advisor to the Board of Directors.

W.      Personally or through delegation, hires, assigns responsibility, counsel, evaluates and (as required) terminates all District employees.

X.      Personally or through delegation serves as Clerk of the Board of Directors.

Y.      Actively participates in outside programs and community affairs in order to represent the District as appropriate.

Z.      Assists, counsels, and advises the Board of Directors on the establishment of personnel policies; acts as agent of the Board in carrying out such policies.

## ARTICLE VI:  HOME HEALTH CARE SERVICE

Section 1.  Establishment

There is hereby established, as a subdivision of this District, Tahoe Forest Home Health Service (TFHHS), which shall be primarily engaged in providing skilled nursing services and other therapeutic services such as physical, speech, occupational, medical social, medical nutritional therapy and home health aide services and infusion therapy to patients in their homes.

Non-Discrimination:  It is the policy of Tahoe Forest Hospital District to not discriminate in admissions, provisions of service, hiring, training and employment practices on the basis of age; ancestry; color; disability; gender, gender identity, or gender expression; marital status; medical condition; national origin; political affiliation; race; religion; sexual orientation;; veteran status/military service; or genetic information.

Section 2.  Governing Body/Professional Advisory Committee

The governing body of TFHHS shall be the Board of Directors of Tahoe Forest Hospital District (Governing Body).  To assist the Governing Body, the Director of TFHHS may appoint a Professional Advisory Committee.  The Professional Advisory Committee of TFHHS shall consist of at least the Director of TFHHS, the Medical Director of TFHHS, the Chief Executive Officer, the Director of Quality Management, the

Director of Inpatient Services, a registered nurse, appropriate representation from three (3) other professional disciplines, and at least (1) one member of the community at large.  The Professional Advisory Committee shall be subject to the control and direction of the Governing Body.  Appointments must be made every 2 (two) years.

Section 3.  <u>Policies, Rules and Regulations</u>

Policies, rules and regulations for the TFHHS may be adopted from time to time by the Governing Body, after recommendation of such policies, rules and regulations by the Professional Advisory Committee.

## <u>ARTICLE VII.  HOSPICE</u>

Section 1.  <u>Establishment</u>

There is hereby established, as a subdivision of this District, Tahoe Forest Hospice which shall be engaged primarily in providing interdisciplinary health care that is designed to provide palliative care and alleviate the physical, emotional, social, and spiritual discomforts of an individual who is experiencing the last phases of life due to the existence of a terminal disease. Tahoe Forest Hospice provides services directly or through arrangements with other qualified providers.  Core services include the following:  skilled nursing services, social services/counseling, medical direction, bereavement services, volunteer services, inpatient care arrangements, and home health aide/homemaker services.  Other therapeutic services such as physical, speech, occupational, nutritional therapy, respite care and infusion care will also be provided.

Non-Discrimination:  It is the policy of Tahoe Forest Hospital District to not discriminate in admissions, provisions of service, hiring, training and employment practices on the basis of age; ancestry; color; disability; gender, gender identity, or gender expression; marital status; medical condition; national origin; political affiliation; race; religion; sexual orientation;; veteran status/military service; or genetic information..

Section 2.  <u>Governing Body/Appointment Of Qualified Administrator</u>

The governing body of Tahoe Forest Hospice shall be the Board of Directors of Tahoe Forest Hospital District (Governing Body).  The Governing Body assumes full legal authority and responsibility for the operation of the hospice.  The Governing Body oversees the management and fiscal affairs of the hospice.  To assist the Governing Body, the Board appoints a qualified administrator.  The qualified administrator is responsible for organizing and directing hospice functions and maintaining liaison with the Governing Body and the interdisciplinary team.  Under the direction of the Governing Body, the qualified administrator arranges for professional services and designates in writing all services provided by the hospice.

Section 3.  <u>Policies, Rules and Regulations</u>

Policies, rules and regulations for Tahoe Forest Hospice may be adopted from time to time by the Governing Body, after recommendation of such policies, rules and

158267.1

regulations by the Chief Executive Officer, the qualified administrator, and the Interdisciplinary Hospice Team.

## ARTICLE VIII.  TAHOE FOREST HOSPITAL

### Section 1.   Establishment

There is hereby established as a subdivision of this District, Tahoe Forest Hospital (TFH), which shall be primarily engaged in providing Emergency Services, Inpatient/Observation Care, Critical Care, Diagnostic Imaging Services, Laboratory Services, Surgical Services, Obstetrical Services and Long Term Care Services.

Non-Discrimination:  It is the policy of Tahoe Forest Hospital District to not discriminate in admissions, provisions of service, hiring, training and employment practices on the basis of age; ancestry; color; disability; gender, gender identity, or gender expression; marital status; medical condition; national origin; political affiliation; race; religion; sexual orientation; veteran status/military service; or genetic information..

### Section 2.   Governing Body

The governing body of TFH shall be the Board of Directors of Tahoe Forest Hospital District (Governing Body).

### Section 3.   Policies, Rules and Regulations

Policies, rules and regulations for TFH must be approved by the Governing Body after recommendation of such policies, rules and regulations by the Chief Executive Officer.  TFH shall operate under the California Department of Health Services.

## ARTICLE IX.  INCLINE VILLAGE COMMUNITY HOSPITAL

### Section 1.   Establishment

There is hereby established, as a subdivision of this District, Incline Village Community Hospital (IVCH), which shall be primarily engaged in providing Emergency Services, Inpatient/Observation Care, Radiological Services including Mammography and Ultrasound, Laboratory Services, Outpatient Surgery and Sleep Disorder Services to patients.

Non-Discrimination:  It is the policy of Tahoe Forest Hospital District to not discriminate in admissions, provisions of service, hiring, training and employment practices on the basis of age; ancestry; color; disability; gender, gender identity, or gender expression; marital status; medical condition; national origin; political affiliation; race; religion; sexual orientation; veteran status/military service; or genetic information..

### Section 2.  Governing Body

The governing body of IVCH shall be the Board of Directors of Tahoe Forest

158267.1

Hospital District (Governing Body).

### Section 3.  Policies, Rules and Regulations

Policies, rules and regulations for IVCH must be approved by the Governing Body, after recommendation of such policies, rules and regulations by the Chief Executive Officer.  IVCH shall operate under the Nevada State Bureau of Licensing.

## ARTICLE X.  MEDICAL STAFF

### Section 1.   Nature of Medical Staff Membership.

Membership on the Medical Staff of Tahoe Forest Hospital District is a privilege which shall be extended only to professionally competent practitioners who continuously meet the qualifications, standards and requirements set forth herein and in the Bylaws of the Medical Staff.

### Section 2.   Qualifications for Membership.

A.  Only physicians, dentists or podiatrists who:

1.   Demonstrate and document their licensure, experience, education, training, current professional competence, good judgment, ethics, reputation and physical and mental health status so as to establish to the satisfaction of the Medical Staff and the Board of Directors that they are professionally qualified and that patients treated by them at the hospital can reasonably expect to receive high quality medical care;

2.   Demonstrate that they adhere to the ethics of their respective professions and that they are able to work cooperatively with others so as not to adversely affect patient care or District operations;

3.   Provide verification of medical malpractice insurance coverage;

4.   Establish that they are willing to participate in and properly discharge those responsibilities determined according to the Medical Staff Bylaws and shall be deemed to possess basic qualifications for membership on the Medical Staff.  No practitioner shall be entitled to membership on the Medical Staff or be able to exercise particular clinical privileges in the Hospital solely by virtue of the fact that he/she is duly licensed to practice in this or any other state, or that he/she is a member of any professional organization, or that he/she had in the past, or presently has, such privileges at Tahoe Forest Hospital or another hospital.

### Section 3.   Organization and Bylaws.

The Medical Staff shall have the authority to organize itself and to adopt Bylaws

18

not inconsistent with these Bylaws for the government of the Medical Staff.

The Bylaws of the Medical Staff shall set forth the procedure by which eligibility for Medical Staff membership and establishment of clinical privileges shall be determined, including standards for qualification.  Such Bylaws shall provide that the Medical Staff, or a committee or committees thereof, shall study the qualifications of all applicants and shall establish and delineate clinical privileges and shall submit to the Board of Directors recommendations thereon and shall provide for reappointment no less frequently than biennially.  The Medical Staff shall also adopt Rules and Regulations consistent with its Bylaws for the conduct of the Medical Staff in its practice in the Hospital.

The Bylaws and Rules and Regulations of the Medical Staff shall be subject to approval of the Board of Directors of the District, and amendments thereto shall be effective only upon approval of such amendments by the Board of Directors.  Neither the Medical Staff nor the Board of Directors may unilaterally amend the Medical Staff Bylaws or Rules and Regulations.

<u>Section 4.   Appointment to Medical Staff</u>

All appointments and reappointments to the Medical Staff shall be made by the Board of Directors as provided by the standards of the Healthcare Facility Accreditation Program.  Final responsibility for appointment, rejection or cancellation of any appointment shall rest with the Board of Directors.

Non-Discrimination:  It is the policy of the District to not discriminate in admissions, provisions of service, hiring, training and employment practices on the basis of age; ancestry; color; disability; gender, gender identity, or gender expression; marital status; medical condition; national origin; political affiliation; race; religion; sexual orientation; veteran status/military service; or genetic information..

All applications for appointment to the Medical Staff shall be processed by the Medical Staff in such manner as shall be provided by the Bylaws of the Medical Staff and, upon completion of processing by the Medical Staff, the Medical Staff shall make a report and recommendation regarding such application to the Board of Directors.  This recommendation will also include the specific clinical privileges requested by the practitioner, and the Medical Staff's recommendation concerning these privileges. No duly licensed physician or surgeon shall be excluded from Medical Staff membership solely because he or she is licensed by the Osteopathic Medical Boards of California and Nevada.

Upon receipt of the report and recommendation of the Medical Staff, the Board of Directors shall take action upon the application by granting or rejecting the same and shall cause notice of its actions to be given to the applicant and to the Medical Staff. Whenever the Board of Directors does not concur in a Medical Staff recommendation relative to clinical privileges, the matter will be referred to the Joint Conference Committee for review before final action is taken by the Board of Directors.

Section 5.  Staff Meetings:  Medical Records

The Medical Staff shall be self-governing with respect to the professional work performed in the Hospital.  The Medical Staff shall meet in accordance with the minimum requirements of the Healthcare Facility Accreditation Program.  Accurate, legible and complete medical records shall be prepared and maintained for all patients and shall be the basis for review and analysis.

For purposes of this section, medical records include, but are not limited to, identification data, personal and family history, history of present illness, review of systems, physical examination, special examinations, professional or working diagnosis, treatment, gross and microscopic pathological findings, progress notes, final diagnosis, condition on discharge and other matters as the Medical Staff shall determine.

Section 6.  Medical Quality Assurance

The Medical Staff shall, in cooperation with the administration of the District, establish a comprehensive and integrated quality assurance and risk control program for the District which shall assure identification of problems, assessment and prioritization of such problems, implementation of remedial actions and decisions with regard to such problems, monitoring of activities to assure desired results, and documentation of the undertaken activities.  The Board of Directors shall require, on a quarterly basis, reports of the Medical Staff's and District's quality assurance activities.

Section 7.  Hearings and Appeals

Appellate review of any action, decision or recommendation of the Medical Staff affecting the professional privileges of any member of, or applicant for membership on, the Medical Staff is available before the Board of Directors.  This appellate review shall be conducted consistent with the requirements of Business and Professions Code Section 809.4 and in accordance with the procedures set forth in the Medical Staff Bylaws.  Nothing in these Bylaws shall abrogate the obligation of the District and the Medical Staff to comply with the requirements of Business and Professions Code Sections 809 through 809.9, inclusive.  The rules relating to appeals to the Board of Directors as set forth in the Medical Staff Bylaws are as follows:

A.  Time For Appeal   Within fifteen (15) days after receipt of the decision of the Judicial Review Committee, either the practitioner or the Executive Committee may request an appellate review.  A written request for that review shall be delivered to the Chief of Staff, the Chief Executive Officer and the other party in the hearing.  If a request for appellate review is not presented within that period, both parties shall be deemed to have waived their rights to appeal.  Thereafter, the Board of Directors shall consider whether to accept the Judicial Review Committee decision as the final decision of the District or to initiate an appellate review by its own action.  If the Board of Directors votes to initiate an appellate review, the Board of Directors shall consider the matter as an appeal in accordance with this Article.  Its decision following that appeal shall constitute the final action of the District.

158267.1

B.  Grounds For Appeal   A written request for an appeal shall include a specification of the grounds for appeal and a concise statement of the arguments in support of the appeal.  The grounds for appeal from the hearing shall be:  (1) substantial and material failure to comply with the procedures required by these Bylaws or applicable law for the conduct of a hearing; (2) the decision was not supported by substantial evidence in the hearing record.

C.  Time, Place and Notice   If an appellate review is to be conducted, the appeal board shall, within thirty (30) days after receipt of notice of appeal, decide upon the specific procedures to be followed and endeavor to advise each party.  The date for completion of the appellate review shall not be fewer than thirty (30) days nor more than sixty (60) days from the date of such receipt of that notice, provided, however, that when a request for appellate review concerns a member who is under suspension or restriction which is then in effect, the appellate review shall be held as soon as the arrangements may reasonably be made.  The time for appellate review may be extended by the Board of Directors or its Chair for good cause.

D.  Appeal Board   The Board of Directors may sit as the appeal board, or it may appoint an appeal board which shall be composed of not fewer than three (3) members of the Board of Directors.  Knowledge of the matter involved shall not preclude any person from serving as member of the appeal board, so long as that person did not take part in a prior hearing on the same matter.  The appeal board may select an attorney at law to assist it in the proceeding, but that attorney shall not be entitled to vote with respect to the appeal.

E.  Appeal Procedure   The proceeding by the appeal board shall be in the nature of an appellate review based upon the record of the hearing before the Judicial Review Committee, provided that the appeal board may accept additional oral or written evidence, subject to a foundational showing that such evidence could not have been made available to the Judicial Review Committee in the exercise of reasonable diligence and subject to the same rights of cross-examination or confrontation provided at the Judicial Review Committee hearing; or the appeal board may remand the matter to the Judicial Review Committee for the taking of further evidence and for decision. Each party shall have the right to present a written statement in support of his/her position on appeal.  During the appeal, each party or representative shall have the right to appear personally before the Board of Directors or the appeal board, for the purpose of presenting oral argument and responding to questions in accordance with procedures to be established by the Board of Directors or appeal board.  Each party shall have the right to be represented by an attorney or by any other designated representative during that appearance.  The Board of Directors or the appeal board shall determine the procedures to be observed during that meeting and shall determine the role of legal counsel.  The appeal board may then conduct, at a time convenient to itself, deliberations outside the presence of the appellant and respondent and their representatives.  The appeal board shall present to the Board of Directors its written recommendations as to whether the Board of Directors should affirm, modify, or reverse the Judicial Review Committee decision, or remand the matter to the Judicial Review Committee for further review and decision.

21

F.  Decision

1.  Except as otherwise provided herein, within thirty (30) days after the conclusion of any appellate meeting, the Board of Directors shall render a decision in writing and shall transmit copies thereof to each side involved in the appeal.   The Board's decision shall be final.

2.  The Board of Directors may affirm, modify, or reverse the decision of the Judicial Review Committee or remand the matter to the Judicial Review Committee for reconsideration.  If the matter is remanded to the Judicial Review Committee for further review and recommendation, that Committee shall promptly conduct its review and issue any appropriate decision and report.

G.  Right To One Hearing   No member or applicant shall be entitled to more than one evidentiary hearing and one appellate review on any matter which shall have been the subject of adverse action or recommendation.

H.  Review Initiated By Board of Directors

1.  Notice of Action   In the event neither the person who requested the hearing before the Medical Staff Judicial Review Committee nor the body whose decision prompted the hearing requests an appeal according to this Article, the decision of the Judicial Review Committee shall be delivered to the Chief Executive Officer for transmittal to the Board of Directors.

2.  Board of Directors Review   The Board of Directors may, at any time within fifteen (15) days of such delivery, initiate appellate review.  The procedures for such review shall be as set forth in Subsections A through G above, substituting the date of action by the Board of Directors initiating appellate review for the date of Notice of Appeal.

## ARTICLE XI.   AUXILIARY

The Auxiliary organizations shall be known as the "Tahoe Forest Hospital Auxiliary" and the "North Lake Tahoe Community Health Care Auxiliary."  The Bylaws of the Auxiliaries shall be approved by the Board of Directors.

## ARTICLE XII.   REVIEW AND AMENDMENT OF BYLAWS

Section I   At intervals of no more than two (2) years, the Board of Directors shall review these Bylaws in their entirety to ensure that they comply with all provisions of the Local Health Care District Law, that they continue to meet the needs of District Administration and Medical Staff, and that they serve to facilitate the efficient administration of the District.

These Bylaws may from time to time be amended by action of the Board of

Directors.  Amendments may be proposed at any Regular meeting of the Board of Directors by any member of the Board.  Action on proposed amendments shall be taken at the next Regular meeting of the Board of Directors following the meeting at which such amendments are proposed.

## ADOPTION OF BYLAWS

Originally passed and adopted at a meeting of the Board of Directors of the TAHOE FOREST HOSPITAL DISTRICT, duly held on the 9th day of January, 1953 and most recently revised on the 21st day of December 2014.

## REVISION HISTORY

1975
Revised - March, 1977
Revised- October, 1978
Revised- April, 1979
Revised- March, 1982
Revised- May, 1983
Revised- February, 1985
Revised- July, 1988
Revised- March, 1990
Revised- November, 1992
Revised- February, 1993
Revised- May, 1994
Revised- April, 1996
Revised- September, 1996
Revised – April, 1998
Revised - September, 1998
Revised – March, 1999
Revised – July, 2000
Revised – January, 2001
Revised – November, 2002
Revised – May, 2003
Revised – July, 2003
Revised – September, 2004
Revised – March, 2005
Revised – December, 2005
Revised – October, 2006
Revised – March, 2007
Revised – April, 2008
Revised – January, 2009
Revised – September, 2010
Revised – September, 2012
Revised – November, 2014
Revised – December, 2015

158267.1

# EXHIBIT D

From: Van Diepen, Tobriah <tvandiepen@TFHD.COM>
Sent: Monday, January 4, 2021 11:53 AM
To: Diana Johnson <diana.johnson@modernizingmedicine.com>
Cc: Popov, Sergej <spopov@tfhd.com>; Olson, Stacy <solson@TFHD.COM>
Subject: RE: [EXTERNAL]Diana Johnson has shared the Tahoe Forest Hospital District - SOW (Data Extraction_Return of Medical Records) with you


Hi Diana,


The original Agreement was between North Tahoe Orthopedics (NTO) and Modernizing Medicine. Tahoe Forest Hospital District acquired NTO in April 2016, and at some point after that, NTO was dissolved. We do not have any documentation on file that the Agreement between NTO and Modernizing Medicine was ever assigned to Tahoe Forest Hospital District.

Tahoe Forest Multispecialty Clinics is a department of Tahoe Forest Hospital District, not a separate entity.

Please let me know if you require further clarification.


Thank you,



Tobriah Van Diepen

Legal Assistant

Tahoe Forest Hospital District

tvandiepen@tfhd.com

(530) 582-6212

4

From: Diana Johnson <diana.johnson@modernizingmedicine.com>
Sent: Monday, January 4, 2021 11:44 AM
To: Van Diepen, Tobriah <tvandiepen@TFHD.COM>
Cc: Popov, Sergej <spopov@tfhd.com>; Olson, Stacy <solson@TFHD.COM>
Subject: Re: [EXTERNAL]Diana Johnson has shared the Tahoe Forest Hospital District - SOW (Data Extraction_Return of Medical Records) with you

# WARNING: This email originated outside of Tahoe Forest Hospital District.

DO NOT CLICK links, open attachments or provide personal/sensitive information unless you recognize the source of this email and know the content is safe. If unsure, call the sender to verify the email is valid or, contact Helpdesk for further assistance.

Tobriah,

I have asked my legal department to review your request.  Please provide me with the background information as to how TFHD obtained/acquired from Tahoe Forest MultiSpecialty Clinics Orthopedics and the timeframe.

Thank you,

Diana

On Mon, Jan 4, 2021 at 1:24 PM Van Diepen, Tobriah <tvandiepen@tfhd.com> wrote:

Hello,

Yes, Sergej is correct. I cannot route this SOW for signatures as written since it refers to the terms and conditions of a License Agreement that TFHD is not a party to.

Please send a new License Agreement that is directly with TFHD for us to review.

Thank you,

Tobriah Van Diepen

Legal Assistant

Tahoe Forest Hospital District

tvandiepen@tfhd.com

(530) 582-6212

From: Popov, Sergej <spopov@tfhd.com>
Sent: Thursday, December 31, 2020 10:48 AM
To: Diana Johnson <diana.johnson@modmed.com>; Van Diepen, Tobriah <tvandiepen@TFHD.COM>
Cc: Olson, Stacy <solson@TFHD.COM>
Subject: FW: [EXTERNAL]Diana Johnson has shared the Tahoe Forest Hospital District - SOW (Data Extraction_Return of Medical Records) with you

Morning Diana,

I am including Tobriah Van Diepen from our Legal to help with edits and routing for signatures.

As I mentioned on our call, the current draft (attached) refers to an agreement between NTO and Modernizing Medicine. TFHD was not a party to that agreement. At this point, we would like to enter into a direct agreement with MM for the extract.

Thanks again for helping us navigate through this process.

This Statement of Work (this "**Statement of Work**") is entered into on the date last signed below (the "**Effective Date**"), pursuant to the terms and conditions of the Modernizing Medicine License Agreement (Orthopedics) dated as of June 18, 2015 (the "**License Agreement**"), by and between Modernizing Medicine, Inc., a Delaware corporation ("**Company**"), and Tahoe Forest Hospital District ("**Medical Practice**"). Capitalized terms not specifically defined herein shall have the meanings set forth in the License Agreement.

Thank you,

Sergej Popov, PMP | Project Manager

Tahoe Forest Health System

530.582.3487

From: Diana Johnson <echosign@echosign.com>
Sent: Thursday, December 31, 2020 10:01 AM
To: Popov, Sergej <spopov@tfhd.com>
Subject: [EXTERNAL]Diana Johnson has shared the Tahoe Forest Hospital District - SOW (Data Extraction_Return of Medical Records) with you

# WARNING: This email originated outside of Tahoe Forest Hospital District.

DO NOT CLICK links, open attachments or provide personal/sensitive information unless you recognize the source of this email and know the content is safe. If unsure, call the sender to verify the email is valid or, contact Helpdesk for further assistance.

# Attached is your copy of the Tahoe Forest Hospital District - SOW (Data Extraction_Return of Medical Records)

Diana Johnson (Modernizing Medicine) says:
*"Sergej,*

*FYI*

*Thank you,*
*Diana"*

Attached is your copy of the **Tahoe Forest Hospital District - SOW (Data Extraction_Return of Medical Records)** between solson@tfhd.com,Eric Grill and Diana Johnson, for your records.

Click here to view this document online in your Adobe Sign account.

Why use Adobe Sign:

- Exchange, Sign, and File Any Document. In Seconds!

- Set-up Reminders. Instantly Share Copies with Others.

- See All of Your Documents, Anytime, Anywhere.

To ensure that you continue receiving our emails, please add echosign@echosign.com to your address book or safe list.

CONFIDENTIALITY NOTICE: This email, including attachments, may contain confidential and privileged material for the sole use of the intended recipient(s). If the reader of this e-mail is not the intended recipient or his/her authorized agent, the reader is hereby notified that any use, disclosure, dissemination, distribution, or copying of this e-mail, including attachments, is strictly prohibited. If you have received this e-mail in error, please IMMEDIATELY (1) Forward the email and all file attachments to compliance@tfhd.com to notify the Tahoe Forest Hospital District Compliance office AND (2) permanently delete the message and any file attachments. Questions may be directed to the Tahoe Forest Hospital District Compliance Hotline at 1(530)582-6655.

Thank you,

DIANA JOHNSON

RISK MANAGEMENT ANALYST

T: 754-201-4224

E: diana.johnson@modmed.com





CONFIDENTIALITY NOTICE: This e-mail message may contain material protected by the Health Insurance Portability and Accountability Act of 1996 and its implementing regulations and other state and federal laws and legal privileges. This message is only for the personal and confidential use of the individuals or organization to whom the message is addressed. If you are an unintended recipient, you have received this message in error, and any reading, distributing, copying or disclosure is unauthorized and strictly prohibited. All recipients are hereby notified that any unauthorized receipt does not waive any confidentiality obligations or privileges. If you have received this message in error, please notify the sender immediately at the above email address and confirm that you have deleted or destroyed the message.

CONFIDENTIALITY NOTICE: This email, including attachments, may contain confidential and privileged material for the sole use of the intended recipient(s). If the reader of this e-mail is not the intended recipient or his/her authorized agent, the reader is hereby notified that any use, disclosure, dissemination, distribution, or copying of this e-mail, including attachments, is strictly prohibited. If you have received this e-mail in error, please IMMEDIATELY (1) Forward the email and all file attachments to compliance@tfhd.com to notify the Tahoe Forest Hospital District Compliance office AND (2) permanently delete the message and any file attachments. Questions may be directed to the Tahoe Forest Hospital District Compliance Hotline at 1(530)582-6655.

--

Thank you,
DIANA JOHNSON
USER MANAGEMENT ANALYST

T: 754-201-4224

E: diana.johnson@modmed.com



CONFIDENTIALITY NOTICE: This e-mail message may contain material protected by the Health Insurance Portability and Accountability Act of 1996 and its implementing regulations and other state and federal laws and legal privileges. This message is only for the personal and confidential use of the individuals or organization to whom the message is addressed. If you are an unintended recipient, you have received this message in error, and any reading, distributing, copying or disclosure is unauthorized and strictly prohibited.  All recipients are hereby notified that any unauthorized receipt does not waive any confidentiality obligations or privileges. If you have received this message in error, please notify the sender immediately at the above email address and confirm that you have deleted or destroyed the message.

CONFIDENTIALITY NOTICE: This email, including attachments, may contain confidential and privileged material for the sole use of the intended recipient(s). If the reader of this e-mail is not the intended recipient or his/her authorized agent, the reader is hereby notified that any use, disclosure, dissemination, distribution, or copying of this e-mail, including attachments, is strictly prohibited. If you have received this e-mail in error, please IMMEDIATELY (1) Forward the email and all file attachments to compliance@tfhd.com to notify the Tahoe Forest Hospital District Compliance office AND (2) permanently delete the message and any file attachments. Questions may be directed to the Tahoe Forest Hospital District Compliance Hotline at 1(530)582-6655.

SUM-100

# SUMMONS
## *(CITATION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MODERNIZING MEDICINE, INC.; DOES 1 THROUGH 20, INCLUSIVE

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
TAHOE FOREST HOSPITAL DISTRICT

**FILE**
**BY FAX**

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*
**EXEMPT FROM FILING FEES**
**GOVERNMENT CODE § 6103**
**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF NEVADA

AUG 2 7 2021

JASON B. GALKIN
EXECUTIVE OFFICER & CLERK
By: S. SKOVERSKI, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* |
|---|---|
| NEVADA COUNTY SUPERIOR COURT<br>201 CHURCH STREET #7<br>NEVADA CITY, CA 95959 | CU21-085759 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David J. Ruderman; Pamela K. Graham; Alena Shamos
COLANTUONO, HIGHSMITH & WHATLEY, PC, 420 Sierra College Drive, Suite 140 Grass Valley, CA 95945-5091
(530) 432-7357

| DATE: *(Fecha)* | AUG 2 7 2021 | Clerk, by *(Secretario)* | S. Skoverski | , Deputy *(Adjunto)* |
|---|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]
SUPERIOR COURT
NEVADA
COUNTY
CALIFORNIA
SEAL

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* MODERNIZING MEDICINE, INC.;
   under: ☒ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

American LegalNet, Inc.
www.FormsWorkflow.com

4. ☒ by personal delivery on *(date)*:

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

American LegalNet, Inc.
www.FormsWorkflow.com

# **<u>EXHIBIT B</u>**

1  Laurie Baddon (SBN 299106)
   lbaddon@mwe.com
2  **MCDERMOTT WILL & EMERY LLP**
   2049 Century Park East
3  Suite 3800
   Los Angeles, CA  90067-3218
4  Telephone:   +1 310 277 4110
   Facsimile:   +1 310 277 4730
5
   Attorneys for Defendant
6  MODERNIZING MEDICINE, INC.

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10

11 TAHOE FOREST HOSPITAL               Case No.
   DISTRICT,
12                                     [Superior Court of the State of
            Plaintiff,                 California for the County of Nevada
13                                     Case No. CU21-085759]
        v.
14                                     **DECLARATION OF MICHELLE
   MODERNIZING MEDICINE, INC., a       SCHEER IN SUPPORT OF
15 Corporation, and DOES 1 through 20, DEFENDANT MODERNIZING
                                       MEDICINE, INC.'S NOTICE OF
16          Defendants.                REMOVAL TO FEDERAL COURT**

17                                     Complaint Filed: August 27, 2021

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF MICHELLE SCHEER

I, Michelle Scheer, declare as follows:

1.     I am the Chief Financial Officer of Defendant MODERNIZING MEDICINE, INC. ("ModMed").  I have personal knowledge of the facts set forth herein, which are known by me to be true and correct, and if called as a witness, I could and would competently testify thereto.

2.     This declaration is submitted in support of Defendant ModMed's Notice of Removal of Civil Action to Federal Court Pursuant to 28 U.S.C. §§1332(a), and 1441.

3.     Defendant ModMed is a Delaware corporation with its principle place of business in Boca Raton, Florida.  Florida is where most of ModMed's corporate and executive officers are employed.  The vast majority of ModMed's administrative functions (including that of payroll, human resources, operations and planning), are conducted in Boca Raton, Florida.  Boca Raton, Florida is also where the actual center of direction, control and coordination for ModMed takes place.

4.     I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed September 13, 2021, at Boca Raton, Florida.




MICHELLE SCHEER

DECLARATION OF MICHELLE SCHEER
ISO NOTICE OF REMOVAL

# **<u>EXHIBIT C</u>**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
David J. Ruderman SBN 245959; Pamela K. Graham SBN 216309
Tahoe Forest Hospital District, c/o Colantuono, Highsmith & Whatley, PC
420 Sierra College Drive, Suite 140
Grass Valley, CA 95945
TELEPHONE NO.: (530) 432-7357    FAX NO.: (530) 432-7356
ATTORNEY FOR (Name): Tahoe Forest Hospital District

**FOR COURT USE ONLY**
**Exempt from Filing Fees**
**Government Code § 6103**
**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF NEVADA

**AUG 27 2021**

JASON B. GALKIN
EXECUTIVE OFFICER & CLERK
By: S. SKOVERSKI, Deputy Clerk

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **NEVADA**
STREET ADDRESS: 201 Church Street, #7
MAILING ADDRESS:
CITY AND ZIP CODE: Nevada City, CA 95959
BRANCH NAME: Main Courthouse

CASE NAME: Tahoe Forest Hospital District v. Modernizing Medicine, Inc.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☒ Unlimited  ☐ Limited | ☐ Counter  ☐ Joinder | **CU21-085759** |
| (Amount demanded exceeds $25,000) | (Amount demanded is $25,000 or less) | Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: |
| | | DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☒ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is   ☒ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☐ monetary  b. ☒ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
4. Number of causes of action (specify): Four
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: August 26, 2021

Pamela K. Graham, Esq.
_____
(TYPE OR PRINT NAME)

► _Pamela K Graham_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**FILE BY FAX**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

| ATTORNEY OR PARTY WITHOUT AN ATTORNEY (name, address, phone and fax number)<br>David J. Ruderman SBN 245959; Pamela K. Graham SBN 216309<br>Alena Shamos SBN 216548<br>Tahoe Forest Hospital District, c/o Colantuono, Highsmith & Whatley, PC<br>420 Sierra College Drive, Suite 140<br>Grass Valley, CA 95945<br>BAR NO.:<br>ATTORNEY FOR (name):   TAHOE FOREST HOSPITAL DISTRICT | For Court Use Only<br><br>FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF NEVADA<br><br>AUG 27 2021<br><br>JASON B. GALKIN<br>EXECUTIVE OFFICER & CLERK<br>By: S. SKOVERSKI, Deputy Clerk |
|---|---|
| Superior Court of California, County of Nevada<br>201 Church Street, Suite 5<br>Nevada City, CA 95959 | |
| PLAINTIFF: TAHOE FOREST HOSPITAL DISTRICT<br><br>DEFENDANT: MODERNAZING MEDICINE INC | |
| NOTICE OF CASE MANAGEMENT CONFERENCE<br>AND ASSIGNMENT OF JUDICIAL OFFICER | CASE NUMBER<br>CU21-085759 |

**NOTICE** is given that the within action has been assigned for all purposes to the **HONORABLE THOMAS M. ANDERSON** and that a Case Management Conference has been scheduled as follows:

| Date: 12/20/2021 | Time: 9:00 a.m. | Dept. 6 | Rm: 3rd Floor |
|---|---|---|---|

**Location: Nevada County Courthouse, 201 Church Street, Nevada City, CA 95959**

*The hearing set in this notice does not eliminate your obligation to file a response to the complaint as specified on the summons. Failure to do so may result in a default judgment.*

- You must file and serve a completed Case Management Statement form CM-110 **AT LEAST FIFTEEN DAYS** before the case management conference (California Rule of Court 3.725). Strict compliance with California Rules of Court 3.110 required.

- You must be familiar with the case and be fully prepared to participate effectively in the case management conference.

- At the case management conference the court may make pretrial orders, including the following:
  - o Orders establishing discovery schedules and exchange of expert witness information;
  - o Referral to judicial arbitration or other alternate dispute resolution with a date of completion;
  - o Orders setting subsequent conferences and the trial date;
  - o Other orders in furtherance of the Trial Court Delay Reduction Act (Gov. Code §68600 *et seq.*);

- Should the parties comply with California Rules of Court 3.110 and timely file their Case Management Statement, appearance at the case management conference **may** be waived.

- The court will issue a proposed order on Thursday before the conference. The proposed order will be posted and available under the link "Tentative Rulings" on the court's web site (www.nccourt.net). For further instructions and information see the Case Management Information Sheet.

- A copy of this Notice must be served on each party with the complaint or other initial pleading, including each new party brought in by way of cross-complaint, complaint in intervention, or other initial pleading.

Dated:   AUG 27 2021                    by_____
                                          **S. Skoverski**
                                          Court Services Assistant
                                          S. Skoverski

| SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF NEVADA |
|---|
| ☐ 201 Church Street, Suite #5, Nevada City, CA  95959          (530)362-4309 |
| ☐ 10075 Levon Avenue, Suite #107, Truckee, CA  96161          (530)362-4309 |



## ALTERNATIVE DISPUTE RESOLUTION SHEET

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interest of the parties that they participate in alternatives to traditional litigation including arbitration and mediation. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*   **ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR process include mediation, arbitration and settlement conferences, among other forms.**

*What are the advantages of choosing ADR instead of litigation?*

- ADR can save time. A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

- ADR can save money. Attorneys' fees, court costs, and expert fees can be reduced or avoid altogether.

- ADR provides more participation. Parties have more opportunities with ADR to express their interest and concerns, instead of focusing exclusively on legal rights.

- ADR provides more control and flexibility. Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

- ADR can reduce stress. ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction that with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

Mediation is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutual acceptable resolution of the dispute. The mediator does not decide the dispute, the parties do.

Mediation may be appropriate when:
- The parties want a non-adversary procedure;
- The parties have a continuing business or personal relationship;
- Communication problems are interfering with a resolution;
- There is an emotional element involved;
- The parties are interested in an injunction, consent decree, or other form of equitable relief.

Arbitration is normally an informal process in which the neutral (the arbitrator) decides the dispute after hearing the evidence and arguments of the parties. The parties can agree to binding or non-binding arbitration. Binding arbitration is designed to give the parties a resolution of their dispute when they cannot agree between themselves or with a mediator. If the arbitration is non-binding, **any** party can reject the arbitrator's decision and request a trial.

Arbitration is appropriate when:
- The action is for personal injury, property damage, or breach of contract;
- Only monetary damages are sought;
- Witness testimony, under oath is desired;
- An advisory opinion is sought from an experienced litigator (if non-binding arbitration).

ATTORNEY OR PARTY WITHOUT AN ATTORNEY *(Name, state bar number, and address):*

| | For Court Use Only |
|---|---|

TELEPHONE NO.:                    FAX NO.:

E-MAIL ADDRESS *(Optional)*

ATTORNEY FOR *(name):*

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF NEVADA
10075 Levon Avenue, Suite 107
Truckee, California 96161

Plaintiff/Petitioner:

Defendant/Respondent:

| **STIPULATION AND ORDER TO PARTICIPATE IN ADR** | Case Number |
|---|---|

Pursuant to CRC §3.221, all parties stipulate to participate in mediation of this case. Any ADR Services shall be paid for by the parties pursuant to a separate ADR Fee Agreement.

The parties further stipulate:

☐  That                                              be appointed as the mediator.

   Address:

   City, State, Zip:

   Phone Number:

☐  That the court appoint a mediator.

It is understood that the ADR Information Form must be submitted by the parties and counsel at the conclusion of the case.

Attorney(s) signing on behalf of their client(s) have been given the authority to stipulate to mediation.

| Date | Type or Print Name | Signature of Party or Attorney for Party |
|---|---|---|
| Date | Type or Print Name | Signature of Party or Attorney for Party |
| Date | Type or Print Name | Signature of Party or Attorney for Party |
| Date | Type or Print Name | Signature of Party or Attorney for Party |

APPROVED:

DATED:

_____
JUDGE OF THE SUPERIOR COURT



**SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF NEVADA**
☐ 201 Church Street, Suite #5, Nevada City, CA  95959          (530) 362-4309
☐ 10075 Levon Avenue, Suite #107, Truckee, CA  96161          (530)362-4309

## *CASE MANAGEMENT INFORMATION SHEET*
### PURSUANT TO CALIFORNIA RULES OF COURT § 3.720 – 3.730

- The clerk will set a date for the Case Management Conference at the time the complaint is filed.

- The complaint and cross-complaint are to be filed and served pursuant to California Rule of Court 3.110, along with a copy of the *Notice of Case Management Conference* and the *Case Management Information Sheet* with attached blank copy of the *Case Management Statement*. Counsel is also required to serve the Nevada County Superior Court Alternative Dispute Resolution Information Sheet and Stipulation form. [See below for forms.]

- At least fifteen calendar days prior to the scheduled Case Management Conference, each party shall file with the court and serve on all parties, a completed *Case Management Statement*. [See below for forms information.]

## EXPEDITED JURY TRIALS

- The Truckee Branch has implemented the Expedited Jury Trials Act of 2010, which permits litigants to opt into a shorter trial with a smaller jury panel to reduce costs and increase the efficient resolution of smaller and less complicated disputes. An expedited jury trial is a binding jury trial before a jury panel of eight (8) or less jurors and no alternates, with a limit of three peremptory challenges for each side. Each side has a limit of five hours to present its case. All parties waive all rights to appeal, to move for directed verdict, or to make any post-trial motions, except as specified in CCP §630.09. In order to opt into the expedited jury trial process, all parties and any insurance carriers must execute a *Stipulation and Consent Order* and file that executed consent order prior to the CMC with the CMC Statements. [See below for forms information.]

## CMC PROCEDURES

- The court will review the CMC Statements filed by parties and, based on the information provided in those statements, will issue a Tentative CMC Ruling establishing proposed trial dates and duration, MSC dates, arbitration, mediation and or ADR requirements, and any other applicable case management criteria. Those Tentative CMC Rulings will be posted on the court's website www.nccourts.net by 3:00PM, the Wednesday prior to the CMC. [See below for forms information.]

- Those CMC Tentative Rulings will become the order of the court, unless by no later than 4:00pm, on the Thursday prior to the date for the CMC, any party calls the court at (530) 362-4309, and notifies the court of that party's intention to appear at the CMC and object to any of the proposed content of the Tentative CMC Ruling. It shall be the responsibility of any objecting party to notify all other parties in the case by the quickest available and reliable means of the required telephonic appearances at the CMC.

## TELEPHONIC CMC PROCEDURES

- All appearances at CMCs shall be by telephone through VCourt. When an objecting party calls the Court, the court will advise the party of the time of the call-in for the CMC. It shall be the responsibility of the party objecting to the Tentative CMC Ruling to notify all other parties, including any unrepresented litigants, of the time of the CMC. Information for appearing through VCourt can be obtained on our website: http://nccourt.net/onlinesvcs/vcourt.shtml.

## ADR PROCEDURES

- ADR information sheets must be included with all summons and complaints at time of service. All parties to the dispute may voluntarily agree to take the matter to an ADR process. A *Stipulation and Order* form must be completed. Parties choose and contact their own ADR provider. [See below for forms information.]

## FORMS AND FORM PACKETS

- All CMC and ADR forms and packets are available at the court's website: www.nccourts.net
- All CMC and ADR forms and packets are available for pick-up at the clerk's counters.
- Judicial Council forms are also available at www.courts.ca.gov.
- You may request forms and packets be mailed; self-addressed 8-1/2"x11" envelope must be provide with postage sufficient to cover 2 oz.

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional)*:
E-MAIL ADDRESS *(Optional)*:
ATTORNEY FOR *(Name)*:

SUPERIOR COURT OF CALIFORNIA, COUNTY OF   Nevada
STREET ADDRESS:   10075 Levon Avenue, Suite 107
MAILING ADDRESS:   Same
CITY AND ZIP CODE:   Truckee, CA 96161
BRANCH NAME:   Truckee Branch

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):* ☐ **UNLIMITED CASE** ☐ **LIMITED CASE** (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:
Date:                    Time:                    Dept.:          Div.:          Room:
Address of court *(if different from the address above)*:

☐  Notice of Intent to Appear by Telephone, by *(name)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one)*:
   a. ☐  This statement is submitted by party *(name)*:
   b. ☐  This statement is submitted **jointly** by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.     The complaint was filed on *(date)*:
   b. ☐  The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
       (1) ☐  have not been served *(specify names and explain why not)*:

       (2) ☐  have been served but have not appeared and have not been dismissed *(specify names)*:

       (3) ☐  have had a default entered against them *(specify names)*:

   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served)*:

4. **Description of case**
   a.   Type of case in      ☐ complaint      ☐ cross-complaint      *(Describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

CEB | Essential
ceb.com | Forms

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720-3.730
www.courts.ca.gov

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial. *(If more than one party, provide the name of each party requesting a jury trial):*

6.   **Trial date**
a.   ☐ The trial has been set for *(date):*
b.   ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.   **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.   ☐ days *(specify number):*
b.   ☐ hours (short causes) *(specify):*

8.   **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.   Attorney:
b.   Firm:
c.   Address:
d.   Telephone number:                                              f.   Fax number:
e.   E-mail address:                                                   g.   Party represented:
☐ Additional representation is described in Attachment 8.

9.   **Preference**
☐ This case is entitled to preference *(specify code section):*

10.   **Alternative dispute resolution (ADR)**
a.   **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
(1)   For parties represented by counsel: Counsel ☐ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
(2)   For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b.   **Referral to judicial arbitration or civil action mediation** (if available).
(1)   ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under of Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
(2)   ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
(3)   ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CASE MANAGEMENT STATEMENT**

CEB Essential Forms
ceb.com

CM-110

| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | CASE NUMBER: |
|---|---|

10.   c.   Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date):*<br>☐ Agreed to complete mediation by *(date):*<br>☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date):*<br>☐ Agreed to complete settlement conference by *(date):*<br>☐ Settlement conference completed on *(date):* |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date):*<br>☐ Agreed to complete neutral evaluation by *(date):*<br>☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date):*<br>☐ Agreed to complete judicial arbitration by *(date):*<br>☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date):*<br>☐ Agreed to complete private arbitration by *(date):*<br>☐ Private arbitration completed on *(date):* |
| (6) Other *(specify):* | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date):*<br>☐ Agreed to complete ADR session by *(date):*<br>☐ ADR completed on *(date):* |

**CASE MANAGEMENT STATEMENT**

CEB Essential Forms<br>ceb.com

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
| DEFENDANT/RESPONDENT: | |

11. **Insurance**
    a. ☐  Insurance carrier, if any, for party filing this statement *(name):*
    b. Reservation of rights:     ☐ Yes     ☐ No
    c. ☐  Coverage issues will significantly affect resolution of this case *(explain):*

12. **Jurisdiction**
    Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
    ☐ Bankruptcy     ☐ Other *(specify):*
    Status:

13. **Related cases, consolidation, and coordination**
    a. ☐  There are companion, underlying, or related cases.
        (1)  Name of case:
        (2)  Name of court:
        (3)  Case number:
        (4)  Status:
        ☐  Additional cases are described in Attachment 13a.
    b. ☐  A motion to   ☐ consolidate   ☐ coordinate     will be filed by *(name party):*

14. **Bifurcation**
    ☐  The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

15. **Other motions**
    ☐  The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

16. **Discovery**
    a. ☐  The party or parties have completed all discovery.
    b. ☐  The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| <u>Party</u> | <u>Description</u> | <u>Date</u> |

    c. ☐  The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

CEB® Essential Forms™
ceb.com

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

17. **Economic litigation**
 a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.
 b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

18. **Other issues**
 ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

19. **Meet and confer**
 a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

 b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):*  _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

CEB ceb.com | Essential , a Forms

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| David J. Ruderman SBN 245989, Pamela K. Graham SBN 216309<br>COLANTUONO, HIGHSMITH & WHATLEY, PC<br>420 Sierra College Drive, Suite 140<br>Grass Valley, California 95945<br>TELEPHONE NO: (530) 432-7357  FAX NO. *(Optional):* (530) 432-7356<br>E-MAIL ADDRESS *(Optional):* pgraham@chwlaw.us<br>ATTORNEY FOR *(Name):* Tahoe Forest Hospital District | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **Nevada**
STREET ADDRESS: 201 Church Street #7
MAILING ADDRESS:
CITY AND ZIP CODE: Nevada City, 95959
BRANCH NAME: Tehama County Courthouse

PLAINTIFF/PETITIONER: Tahoe Forest Hospital District
DEFENDANT/RESPONDENT: Modernizing Medicine, Inc.; Does 1 through 20, Inclusive

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CU21-085759 |
|---|---|

TO *(insert name of party being served):* Modernizing Medicine, Inc.; Does 1 through 20 inclusive.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of emailing and mailing: August 30, 2021

Pamela K. Graham
_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF SENDER — MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. ☒ A copy of the summons and of the complaint.
2. ☐ Other *(specify):* Amendment to Complaint (Doe 5)

*(To be completed by recipient):*

Date this form is signed: _____ _____, 2021

Robert M. Kline/McDermott Will & Emery
_____
TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ _____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory se
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
*www.courtinfo.ca.gov*

254483.1

American LegalNet, Inc.
www.USCourtForms.com